BEVERLY, D. B. A. BEVERLY BLACKTOPPERS, *v.* ADRIAN CONST. CO., INC., ET AL.

[Cite as Beverly v. Adrian Const. Co., Inc., 9 Ohio Misc. 176.]

(No. 19505—Decided November 1, 1966.)

Common Pleas Court of Paulding County.

*Messrs. Weaner, Hutchinson & Zimmerman,* for plaintiff.
*Mr. Winn C. Hamrick* of *Messrs. Hamrick, Lecrone & Parks* and *Mr. William T. Hunt,* for defendants, Adrian Const. Co.
*Mr. Harvey E. Hyman,* for Paulding Village.

HITCHCOCK, J. Defendant corporation, Adrian Const. Co., Inc. (Adrian), has filed a motion to quash service of summons, presenting the question of whether or not the rule of *Gauder* v. *Canton Provision Company* (1937), 56 Ohio App. 170, 24 Ohio Law Abs. 433, 10 N. E. 2d 163, 9 O. O. 288, is affected by the Ohio Legislature's adoption of Rule 20, Federal Rules of Civil Procedure[1] by the enactment of Section 2307.191, Revised Code, effective August 26, 1963, and if so, to what extent. Apparently, this is a matter concerning which there is no Ohio precedent.

The pleadings show that Adrian has, as general contractor for the defendant Village of Paulding, recently completed the building of a new water reservoir and water treatment plant to the extent it no longer has any employees or agents presently in Paulding County. Plaintiff Beverly, a resident of Hicksville, Defiance County, is a subcontractor who claims $3,122.00 with interest from May 14, 1966, for labor and paving materials placed around the waterworks' office; a lien upon monies of the Village of Paulding which it is obligated to pay Adrian and prays an order directing the village to pay the same; or, if it be determined that it is not entitled to a lien, for personal judgment against Adrian for the amount claimed. Adrian has its principal office in Dayton, Montgomery County.

Summons has been served upon Paulding by the Sheriff of Paulding County and upon Adrian's statutory agent by the Sheriff of Montgomery County. The village has filed an answer which admits the general contract with Adrian and for want of knowledge, denies the other allegations of the petition.

At the oral argument counsel for the village admitted that the village has over $44,000.00 to be paid Adrian when the village's engineer gives final approval to the work done. Counsel also stated that he was informed that the engineer has refused to approve the paving in question for want of a sealer, and that he felt certain the village would be willing to pay the fund presently being withheld into court for distribution as the court might eventually find the parties entitled because the village wants a final determination of this project.

---

[1] Which rule was taken verbatim from California and New York practice acts, circa 1920. Similar statutes, identical or nearly so, are now in force in a number of states.

Counsel for plaintiff stated that Beverly's sub-contract with Adrian contains absolutely no mention of any sealer but that now Adrian insists that Beverly seal the work he has done at his own cost of $450.00. This he refuses to do and Adrian refuses to pay him.

*Gauder* held that, except where special and specific statutes applied, a trial court in one county cannot acquire jurisdiction over a domestic corporation in another county, unless properly joined with another defendant over whom jurisdiction is acquired by the trial court. That in an action where defendants are an individual in one county and a corporation in another (retailer and food manufacturer, respectively) and suit is brought in the county of the individual defendant, they are not properly joined in a tort action unless they defend as persons jointly and severally liable.

See *Canton Provision Co.* v. *Gauder* (1935), 130 Ohio St. 43, 196 N. E. 634, 3 O. O. 82. In this case it was said at page 47 of the official reporter, "* * * The principle that two tort-feasors cannot be joined as defendants in an action for injuries arising out of their concurrent acts where one is primarily and the other secondarily liable to the party injured is recognized in this state. Under such circumstances the torts are related but not joint. * * *"

Many of the Ohio cases dealing with this principle have been examined by the court. It appears that Ohio courts have applied this principle with great consistency but the cases found deal with tort rather than contract actions.

Pertinent parts of Section 2307.191, Revised Code, read: "* * * All persons may be joined in one action as defendants if there is asserted against them jointly, severally, *or in the alternative, any right to relief* in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of *law or fact* common to all of them will arise in the action. A plaintiff or defendant *need not be* interested in obtaining or defending against all the relief demanded. Judgment may be given * * * against one or more defendants according to their respective rights to relief, and against one or more defendants according to their respective liabilities. * * *"

Plaintiff asserts an equitable lien against the waterworks fund of the village held to discharge an obligation owed the con-

tractor; he also asserts a subcontract and breach thereof by the contractor for work performed by him on the village's waterworks project.

The village is not a fictitious or wholly disinterested party, and if there is anything shown in the petition to justify a possible equitable lien against the village funds plaintiff's asserted claim to relief is certainly neither a fraudulent claim or a sham because essentially, directly or indirectly, it is the source of payment for his claim.

It appears obvious that plaintiff might have perfected a mechanic's lien or brought an action to attach the funds in the village treasury in the waterworks construction account.

No doubt any attempt to enforce a mechanic's lien against a municipality, where a general contractor would receive his compensation and flee the county, in view of the laws relating to public finance, would pose peculiar problems uncommon in the usual mechanic's lien. Extended search has disclosed only two mechanic's lien actions brought against public authority, viz.:

*Union National Bank* v. *Cleveland* (1895), 10 O. C. C. 222, 6 C. D. 536, holding that mechanic's liens (without explanation as to whether they were created by statute or by rule of law) existed in favor of subcontractors against a city paving fund and the fund was payable to them prior to the claim of plaintiff bank as assignee of the general contractor's interest. And,

*Ropp* v. *Commissioners* (1917), 8 Ohio App. 41, 29 C. D. 338, holding that a subcontractor's lien perfected against county commissioners pursuant to the mechanic's lien statute was enforceable as a claim against county road building fund prior to payment of a later subcontractor who finished the job and to payment of the general contractor.

It thus appears that there is no public policy against awarding such public funds to the persons properly entitled thereto.

In 34 Ohio Jurisprudence 2d, Liens, Section 18, at page 428, we find it said,

"* * * It is essential to the existence of an equitable lien that while the lien continues, possession of the things remain with the debtor or the person who holds the proprietary interest subject to the encumbrance. This distinguishes an equitable from a common-law lien, and the holder of a common-law lien who has surrendered possession may have a right to claim an equitable lien."

"The doctrine of equitable liens has been liberally extended in modern times for the purpose of facilitating mercantile transactions, and in order that the intention of the parties to create specific charges may be justly and effectually carried out. The court will apply such equitable maxims as "equity considers as done that which ought to be done," and "equity looks to the substance, and not to the form," as ground for holding that there is a lien."

Of course equity follows the law when specific statutes are applicable but the court has been unable to discover any statute which necessarily applies here to deny the plaintiff an equitable lien in Paulding County where this contract was entered into, where the work was done, and whence is located the village treasury which is the direct source of the contractor's pay and the indirect source of plaintiff's pay, which is months past due. Proof of these facts would seem to be more than adequate to establish an equitable lien upon defendant village's waterworks construction fund.[2]

---

[2]It may be that plaintiff's action here would have been sustainable prior to Section 2307.191, Revised Code, as being one joining a legal and an equitable cause of action against different parties because: "In equity it is not necessary that all parties have an interest in the claim which is the subject of the suit; it is sufficient that they claim an interest in the property sought to be subjected in payment of the claim." *Bank* v. *Carpenter* (1834), Wright 729. See discussion 41 Ohio Jurisprudence 2d 283, Parties, Section 27 et seq.

This court believes, however, that when the purpose and words of a newly enacted statute are clear, the words should be interpreted as commonly understood, and as supplanting or by implication repealing prior law not consistent therewith. Especially since, by what I perceive to be the current general consensus, there is today no oversupply of attorneys as per the most widely held belief when the writer came to the bar in 1939. In those days—and as obviously in others—it often seemed that legal procedural doctrines productive of little but delay and avoidance of decision on the merits were perpetuated with solid professional support.

It is my belief that dissatisfaction was rarely voiced by members of the bar, consciously, or far more often—unconsciously—because they felt that abolition of needless complexity in matters procedural would impair their economic situation, and it is no doubt extremely difficult for anyone to act contrary to his concept of the law of self-preservation. On the other hand, is it not perhaps more likely that if a more satisfactory service were rendered by the profession today, many more would seek professional service tomorrow? And I have seen not a few defendants with poor cases who appeared positively relieved when protracted litigation was ended, despite adverse judgment.

See *Clapp* v. *Banking Company* (1893), 50 Ohio St. 528, 35 N. E. 308, 30 W. L. B. 305, 30 W. L. B. 359, dealing with an insolvency action in the Probate Court. The issue was whether a statute authorizing the Probate Court in such actions "to order payment of all encumbrances and liens" included "equitable liens." In holding that it did, the court, beginning on page 535 of the official reporter said: "* * * In general, the word lien implies a hold or claim upon property for some debt or charge. "The term lien," says Whittaker, in his work on Liens, 1. "as adopted by our courts of law and equity, and as used by our legal writers, differ in the extent of its acceptation. In that which is most extensive, it applies to every case in which either real or personal property is charged with the payment of any debt or duty; every such charge being denominated 'a lien on the property.' " It is also defined in Jac. Law Dict. title Lien, as "an obligation, tie or claim, annexed or attaching upon any property, without satisfying which such property cannot be demanded by the owner. "* * *" This precedent is followed in *Adlard* v. *Stockstill* (1899), 5 O. N. P. 487, 5 O. D. 493.

Also, in *Krug, Receiver,* v. *National Cash Register Co.* (1903), 1 O. N. P. (N. S.) 273, 1 O. N. P. (N. S.) 429, 13 O. D. 735, we find it said:

"Equitable liens are such as exist in equity and of which courts of equity alone take cognizance for the purpose of justice. They are frequently allowed upon the principle that equity looks upon that as done which ought to have been done (Story's Eq. Jurisprudence, Section 1215; 14 Cent. Law Jour., 42). If a lien was attempted to be secured and the method had failed, equity might enforce the method so agreed upon. It would not make a new and different contract of the parties." (1 O. N. P. (N. S.) 275; 1 O. N. P. (N. S.) 430; 13 O. D. 736.)

To the suggestion that to overrule this motion would be contrary to the rule announced in *Summit-Portage Concrete & Supply Co.* v. *Hunter* (1965), 1 Ohio App. 2d 545, 206 N. E. 2d 10, 30 O. O. 2d 580, this court cannot agree that that case was rightly decided and declines to be bound by it for the reason that it treats part (B) of Section 2307.191, Revised Code, as not being pertinent in the disposal of the issue there. In the opinion of this court the very purpose of part (B) providing:

"The court may make such orders as will prevent a party

from being embarrased, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or may make other orders to prevent delay or prejudice.''
was to prevent such results as were reached in mentioned cause.

Moreover, it seems to me that the joinder statute now invoked by plaintiff is the latest legislative effort to give life and salutary flesh and blood impact to these words from Article I, Section 16, Ohio Constitution. ''* * *every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.'' Although these words have been in our Ohio Constitution since its original drafting in 1802, they have, I feel certain, been all too often neglected not only by myself but by too many of my professional fellows. Re joinder in Ohio Courts, see the candid and excellent discussion by Shaw, ''The 1963 Permissive Joinder Statute in Ohio,'' 25 O. S. L. J. 261.

True it is that a joinder in the alternative failed, in respect to Rule 20 F. R. C. P. in *Pearce* v. *Pennsylvania R. Co.* (1946), D. C. Pa., 7 F. R. D. 420, affirmed 162 F. 2d 524, cert. denied 332 U. S. 765, 68 S. Ct. 71, 92 L. Ed. 350, not because words of the rule did not grant that authority, but because of the policy to limit diversity jurisdiction as narrowly as possible. There, the alternative cause of action, standing alone, could only have been brought in the state court. Had it, however, been originally cognizable in federal court, the joinder would have succeeded. There is no similar policy in Ohio to limit the jurisdiction of the Common Pleas Court.

Consequently, plaintiff, as authorized by Section 2307.191, Revised Code, has ''rightly brought'' this action in this court and valid summons has been served upon defendant Adrian as per Section 2703.04, Revised Code. As to this proposition, Judge Leis's opinion in *American States Ins. Co.* v. *O K Trucking Co.* (1958), 79 Ohio Law Abs. 467, 147 N. E. 2d 526, 7 O. O. 2d 292, although dealing with different facts, is applicable in principle and is approved and followed.

The court therefore finds that plaintiff has, using the words of the statute: ''asserted against'' (the defendants) ''in the

alternative'' a ''right to relief in respect of or arising out of the same * * * occurrence'' and that some ''question of law or fact common to * * * them will arise in the action.''

Accordingly, the motion to quash will be overruled.