## Koon v. Clapp
*[Cite as 8 AOA 631]*

*Case No. 89-P-2101*
*Portage County, (11th)*
*Decided November 2, 1990*

*Benito C. R. Antognoli, 11 South River Street, Kent, Ohio 44240, for Plaintiffs-Appellees.*

*Victor V. Vigluicci, P. O. Box 129, 240 South Chestnut Street, Ravenna, Ohio 44266, for Defendants-Appellants.*

FORD, J.

Appellees, Robert and Carolyn Koon, filed a complaint for money damages against appellants, George and Margaret Clapp, and against Nick Nack Patty Wack, Inc., on November 20, 1986. In their complaint, appellees alleged unpaid rent and sought to recoup contributions made to Nick Nack Patty Wack, Inc., the corporation formed by the parties. Appellants counterclaimed against appellees alleging an equitable lien against the property on which the corporation operated, and seeking reimbursement for improvements made on the premises.

The real estate in question, which appellees owned, was sold during the pendency of.this action, and, by stipulation of the parties, the net proceeds from the sale ($18,694.00) were placed in escrow with the Portage County Clerk of Courts.

On July 19, 1989, following a bench trial, the court awarded judgment in favor of appellees and against the corporation in the amount of $13,090.45. The trial court further awarded judgment in favor of appellants against the corporation (against which they had filed no cause of action) in the amount of $13,389.12, but denied appellants' claim of equitable lien against appellees' property. On August 2, 1989, having found no equitable lien to exist, the trial court released the escrowed funds to appellees.

The relevant facts begin with appellees' 1976 purchase of a house on State Route 43 in Brimfield for $12,600. At the time of purchase the house was uninhabitable. Appellees installed a new roof, new plumbing, aluminum siding, rewired much of the house, and built a new 24 x 24 garage. Appellees had the property insured at a value of $49,900, and listed the house for $49,000 in 1983. Appellees lived on the premises from 1976 to August of 1985.

In August of 1985, appellants approached appellees proposing that the four of them start a bakery and craft business on the premises. It is noted that appellant, George Clapp, and appellee, Carolyn Coon, are brother and sister. In September of 1985, the parties consented to the venture, and although nothing was reduced to writing, appellees moved to another residence.

Appellees' property was zoned residential and needed to be changed to commercial. Appellant, George Clapp, was primarily responsible for the renovations necessary to convert the property to business use. The parties agreed that appellants would rent the premises for $200 a month from September 1985 to August 1986, at which time the rent would jump to $325 a month. Rent accrued from the time the appellees moved out, but appellants assert that payment was to be deferred until the business began to turn a profit.

The parties agreed that no renovations were to be made prior to the zoning change and appellants were not to expend more than $200 without the consent of all the parties. Much to appellees' chagrin, appellants began to expend amounts well beyond the appellees' contemplation, and the situation soured.

From the outset, the parties bickered over the necessity and extent of expenditures undertaken by appellant, George Clapp. Appellants, against appellees' wishes, spent thousands to gut the interior of the building, install new plumbing and a sewer, and construct a driveway and parking lot. Appellants eventually documented that they spent $7,151.59 on real estate renovations; $6,237.53 on non-real estate disbursements; and that they allotted approximately 550 man hours to the project.

Appellees also documented similar expenditures for tools and equipment, paperwork and licenses, remodeling, and unpaid rent. These expenditures aggregated to a sum of $15,385.45. Appellees' primary source of funds was a $10,000 loan which was obtained for the business. As collateral for the loan, appellees mortgaged the subject premises.

Eventually, the property was zoned commercial in December of 1985; on June 13, 1986, the business was incorporated; and on June 18, 1986, the bakery and craft shop opened its doors for business. Appellees worked with appellants on the venture for approximately ten days until June 28, 1986 when appellees moved to Tennessee where Robert Koon began a new job.

Appellants continued to operate the business through the summer months of 1986. The business did not return a profit during this period. Disgruntled with appellants' nonpayment of rent, appellees filed the instant cause and a separate action to evict the appellants. Appellees also listed the property with a realtor in December of 1986 at a price of $58,000. As a result of the eviction proceeding, the referee held in favor of appellees and ordered appellants to pay $200 a month from August of 1985 to August of 1986, and further ordered appellants to pay $325 a month from September 1, 1986 to April 29, 1987. The property was eventually sold in June of 1987 for $50,000.

From the July 19, 1989 order granting both parties judgment against the corporation, but denying appellants' claim of equitable lien, appellants now appeal, raising the following assignments of error:

"1. The trial court erred in requiring a specific intent of the parties to have the real estate act as security for their investment before the court would impose an equitable lien to prevent the unjust enrichment and unconscionable retention of benefits by the appellees.

"2. The trial court erred in granting the appellants judgment against the defendant, Nick Nack Patty Wack, Inc., and not against the plaintiffs-appellees by way of equitable lien on their property."

In their first assignment of error, appellants contend that a showing of specific intent of the parties to have the real estate act as security for their investment is not required before an equitable lien will arise. In order to promote conceptual clarity and prevent confusion, it is important to note that the trial court did not require "specific intent." Rather, the trial court found that "there was *no intent* of the parties to have the real estate act as security for any investment in the corporation."

Ohio courts have held that an equitable lien may arise either from an *express written contract* which shows an intention to charge some particular property with a debt or obligation, *or* may be *implied* and declared by a court of equity on the general considerations of right and justice as applied to rela-

tions of the parties and the circumstances of their dealings. *Syring v. Sartorious* (1971), 28 Ohio App. 2d 308. The agreement that the specific property will act as a security for the debt need not be express, but can be implied by relationship of the parties. *See, e.g., Capital City Lumber Co. v. Ellerbrock* (1964), 177 Ohio St. 159; *Beverly v. Adrian Const. Co.* (C.P. Paulding County 1966), 9 Ohio Misc. 176.

Authors have interpreted these Ohio cases to stand for the proposition that "there are only two essential elements to the equitable lien: a debt, duty or obligation and a res to which that obligation attaches." Note, The Equitable Lien Alternative in Ohio (1975), 44 Cin. L. Rev. 265, 267. This approach, however, negates the necessary element of intent, whether express or implied.

Recent Ohio cases have turned, at least in part, upon whether the party seeking to impress an equitable lien has established any agreement or relationship which manifests an *intent,* either expressed or implied from their conduct, that the res will serve as collateral for the obligation. See, *e.g., First Bank Nat'l Assn. v. E.F. Hutton & Co., Inc.* (Jan. 14, 1988) Cuyahoga App. No. 53083, unreported; *Tinon v. Coachlight Enterprises* (Jan. 10, 1985) Franklin App. No. 84AP-488, unreported; *General Insurance Company of America v. Lowery* (S.D. Ohio, 1976), 412 F.Supp. 12, *affirmed* (C.A. 1978), 570 F.2d 120 (applying Ohio law).

While no individual case has crystallized the requisite elements which must be met before an equitable lien will arise, the cited cases, read as a whole, establish three necessary components:

1) a duty, debt or obligation; 2) a res; and 3) an intent, either express or implied, that the specific property will serve as security for the payment of the debt or obligation. See, also, 51 American Jurisprudence 2d (1970) 162, Liens, Section 24. The only element found to be unnecessary under the modern view is an instrument signed by the parties memorializing this intent.

In the instant case, appellants and appellees formed a corporation, and each incurred debt on behalf of the venture. All of the expenditures made by all of the parties were made for the benefit of the corporation, and the record is simply devoid of any indication that the *property* in question would serve as collateral for debts incurred on behalf of the corporation. In fact, George Clapp's own testimony reveals that it was his intention throughout the start-up process to look to the corporate earnings for reimbursement.

Although appellants did not bring a claim for "unjust enrichment" in their counterclaim, it is important to note that such a claim would not have prevailed. Appellees' uncontroverted testimony established that after they purchased the home for $12,600 in 1976, they made major renovations and improvements. Moreover, appellees listed the property in 1983 for $49,000, and insured it for $49,900. Despite the substantial amounts expended in converting the premises from a residence to a commercial property, there was, at best, a negligible effect on the property's market value. This fact is evidenced by the eventual sale price of $50,000. Therefore, without any benefit conferred upon the property, per se, and no benefit conferred upon appellees, no claim for unjust enrichment can be made. *Cincinnati v. Fox* (1943), 71 Ohio App. 233.

Accordingly, there being no manifestation of intent, either express or implied, that the property serve as collateral and no unjust enrichment, appellants' first assignment of error is without merit.

In the second assignment, it is argued that the trial court erroneously granted appellants judgment against the corporation, and not against the appellees by way of the equitable lien on their property. This assignment is partially well-taken.

Admittedly, appellants did not file a claim against the corporation, but rather, against the appellees. As such, the trial court erroneously entered judgment against the corporation. However, based upon the discussion in the first assignment, it is obvious that no equitable lien exists against appellees' property.

Accordingly, the judgment against the corporation regarding appellants' counter claim is reversed.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.

CHRISTLEY, P.J., and MAHONEY, J., concur.