DUNHAM'S MUSIC HOUSE, INC. v. ASHEVILLE THEATRES, INC.

No. 7028SC433

(Filed 30 December 1970)

**1. Uniform Commercial Code § 3— date of application**

The Uniform Commercial Code became effective in this State at midnight 30 June 1967. G.S. 25-10-101.

**2. Uniform Commercial Code § 71; Landlord and Tenant § 2— landlord's lien on personal property**

A lien on personal property granted to a lessor by contract is not excluded from the provisions of the Uniform Commercial Code. G.S. 25-9-104(b); G.S. 42-15.

**3. Uniform Commercial Code § 71; Landlord and Tenant § 6— lease agreement — security interest in favor of lessor — trade fixtures**

Lease agreement between lessor and lessee *is held* to create a security interest in favor of lessor, upon the lessee's default under the lease, in a piano and organ that was acquired by the lessee for use on the premises. G.S. 25-9-204(1).

**4. Uniform Commercial Code § 75— perfection of landlord's security interest — priority over conditional sales contract**

In an action to determine the right of possession to a piano and organ as between a landlord under a lease agreement and a music company under a conditional sales contract, neither party having filed a financing statement, the landlord, who perfected its security interest under the lease by taking possession of the property pursuant to G.S. 25-9-503, has priority over the music company. G.S. 25-9-312(5).

**5. Appeal and Error § 57— findings of fact — nonjury trial — review on appeal**

The findings of fact in a nonjury trial have the force and effect of a jury verdict if supported by the evidence and are conclusive if supported by any competent evidence.

APPEAL by plaintiff from *Grist, Judge,* 6 April 1970 Session of Superior Court of BUNCOMBE County.

On 29 September 1967, Asheville Theatres, Inc. (Theatres), leased certain premises in a building located at 47 Merrimon Avenue in Asheville, North Carolina, to Foreman and Humphries (lessees) who were partners engaged in the conduct of a business known as Donald's Sportsman's Lounge. On 1 October 1967, a "Supplemental Amendment and Addition to Price Lease" for the adjacent premises, 45 Merrimon Avenue, was entered into between the same parties. Neither lease was recorded. The lease of 29 September 1967 contained the following provision:

> "15. REMOVAL OF EQUIPMENT AND FIXTURES. All trade furnishings, fixtures and equipment in the leased premises which are supplied and installed at the sole expense of Lessee shall remain Lessee's property. Lessee may remove these items within ten (10) days after termination of this Lease, provided: (a) Lessee is not in default hereunder at the time of termination; (b) Lessee immediately repairs or reimburses Lessor for the cost of repairing all resulting damages or defacement; and (c) removal of the items can be accomplished without major damage to the leased premises. Lessee may not remove any of the furnishings, fixtures or equipment described in Exhibit A attached hereto nor may Lessee remove any furnishings, fixtures or equipment which Lessee may have supplied or installed to replace such furnishings, fixtures or equipment described in Exhibit A. All items not removed as provided shall become Lessor's property."

This provision was incorporated by reference in the lease of 1 October 1967.

On 19 October 1967, Dunham's Music House, Inc. (Dunham's), sold to lessee one Hammond Organ and one used Steinway Grand Piano. No down payment was made, but a document entitled "Conditional Sales Contract" was entered into under the terms of which lessees were to pay the total purchase price in two equal installments, one on 25 October 1967 and the other on 25 November 1967. This document was not recorded nor was a financing statement filed. The piano and organ were delivered to the leased premises at 47 Merrimon Avenue, but no payment was ever made to Dunham's by lessees. Dunham's,

prior to 31 January 1968, attempted to repossess the piano and organ from the premises, but were not able to gain access to the premises.

On 31 January 1968, Theatres took possession of the premises and of the piano and organ, having, on that date, sent a letter to lessees declaring the lease in default and posted a copy of the letter on the door of the premises.

On 14 February 1968, Dunham's instituted this action to recover possession of the piano and organ, for damages for wrongful detention and, ancillary to the action, instituted claim and delivery proceedings to obtain immediate possession of the piano and organ.

By answer, Theatres claimed a superior right by virtue of section 15 of the lease agreement.

In due course, after proceedings had in the General County Court, the matter came on for trial in the Superior Court. The court affirmed the judgment of the General County Court ruling that the right to possession of Theatres was superior to Dunham's.

Dunham's appealed, assigning errors.

*Shuford, Frue and Sluder, by Gary A. Sluder for plaintiff appellant.*

*McGuire, Baley and Wood, by Richard A. Wood, Jr., for defendant appellee.*

MORRIS, Judge.

[1] The first question raised by this appeal is whether the rights of the parties are governed by the provisions of the Uniform Commercial Code. The Code became effective in this State at midnight 30 June 1967. G.S. 25-10-101. This was prior to the date of all transactions involved in this appeal. Unless the transactions are specifically exempted from the operation of the Code, the provisions of the Code are applicable in determining the rights of the parties.

[2] Appellant argues that the Code expressly exempts from its provisions landlord's liens and Theatres has no security interest, so, a *fortiori*, decision should be controlled by pre-Code

law. It is true that G.S. 25-9-104(b) provides that the Code does not apply "to a landlord's lien." It is conceded by the parties that the landlord's right of distress as a security for the payment of rent available under English common law has never existed in North Carolina. The only statutory landlord's lien in this jurisdiction is that provided for by G.S. 42-15. Since the advent of the Uniform Commercial Code in this State, the courts have not been called upon to determine the meaning and application of the exclusionary phrase "landlord's lien." Other courts have, however, dealt with the problem. In *In re King Furniture City, Inc.*, 240 F. Supp. 453 (D.C.E.D. Arkansas) 1965, the phrase was construed to refer to liens created by statute. The reasoning of the Court was:

> "Furthermore a detailed reading of Ark. Stats, § 85-9-104 (the section excluding certain types of transactions from the Code) in its entirety, together with the comments of the National Conference of Commissioners of Uniform State Laws, indicates that all of the other subsections deal with matters thought to be sufficiently covered by a statute of the United States or of the several states or that they deal with special transactions which do not fit easily into general commercial statute and which are adequately covered by existing law. From this viewpoint it also appears that the term 'landlord's lien' as used in the statute must be interpreted as referring to liens created by statute, for the matter of liens on property such as here involved is obviously considered by all of the remainder of the Code as fitting into a general commercial statute."

The property involved in that case was the inventory of a furniture store and the Court had before it the determination of the question whether the lessor of the premises occupied by the furniture store had a prior right to possession of the inventory under a lien created by the lease over the trustee in bankruptcy of the furniture store, lessee. Also holding that the Code exclusion of landlord's liens is not applicable to consensual liens are *In re Leckie Freeburn Coal Co.*, 405 F. 2d 1043 (6th Cir., C.A. Ky.) 1969, and *Universal C.I.T. Credit Corporation v. Congressional Motors*, 228 A. 2d 463 (Md. Ct. Appeals) 1967. We adopt the reasoning of these cases and hold that a lien on personal property granted a lessor by contract is not excluded from the provisions of the Uniform Commercial Code.

[3]   Appellant contends that even if this view be adopted, the lease agreement here creates no security interest. We disagree. G.S. 25-9-204(1) provides that "A security interest cannot attach until there is agreement (subsection (3) of § 25-1-201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place . . . " We are of the opinion that the lease, and particularly section 15 thereof, between Theatres and lessees meets the test.

Holding as we do that Theatres acquired a security interest in the piano and organ, we must now determine whether Theatres or Dunham's effectively perfected its security interest. The methods of perfecting and the priorities of holders of security interests are set out in the Code. G.S. 25-9-302, G.S. 25-9-304, and G.S. 25-9-305 provide for perfection of a security interest by filing a financing statement, by operation of law, and by taking possession.

[4]   G.S. 25-9-312 is entitled "Priorities among conflicting security interests in the same collateral." Subsection (5) governs this controversy:

"(5)  In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

(a)  in the order of filing if both are perfected by filing, regardless of which security interest attached first under § 25-9-204(1) and whether it attached before or after filing;

(b)  in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under § 25-9-204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

(c)  in the order of attachment under § 25-9-204(1) so long as neither is perfected."

Since neither Theatres nor Dunham filed a financing agreement, the priorities must be determined in the order of

perfection. Theatres perfected its security interest by taking possession of the property under the provisions of G.S. 25-9-503. It follows that the trial court correctly affirmed the General County Court.

Dunham's could have easily protected itself by filing the required statement. It would have then brought itself under the protection of G.S. 25-9-312(4) providing: "A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter."

[5] Appellant's assignments of error based on exceptions to the findings of fact of the court are overruled. The matter, by stipulation, was heard by the court without a jury, and the findings of fact have the force and effect of a jury verdict if supported by the evidence and are conclusive if supported by any competent evidence, *Stevenson v. Pritchard*, 9 N.C. App. 59, 175 S.E. 2d 367 (1970), even though there is evidence *contra*, *Equipment Co. v. Equipment Co.*, 263 N.C. 549, 140 S.E. 2d 3 (1965).

Affirmed.

Judges BROCK and GRAHAM concur.