GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

Edward F. LOWRY et al., Defendants.

Civ. No. C–3–75–52.

United States District Court, S. D. Ohio, W. D.

April 29, 1976.

J. Paul McNamara, Paul Tague, McNamara & McNamara, Columbus, Ohio, for plaintiff.

Jacob A. Myers, Kusworm & Myers, Dayton, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This is an action to compel specific performance of an agreement. It was heard on June 20, 1975, for purposes of a preliminary injunction and on the merits on February 2, 1976. In accordance with Rule 65(a)(2), evidence presented at the hearing for preliminary injunction was deemed to be evidence on the merits as well and has been considered by the Court in reaching its determination. Pursuant to Rule 52 of the Federal Rules of Civil Procedure the Court does submit herewith its findings of fact and conclusions of law.

## I

### FINDINGS OF FACT

1. Prior to January 14, 1972, plaintiff General Insurance Company of America issued surety bonds on which George A. Hyland, Edward F. Lowry and C. M. Dingledine were indemnitors. Pursuant to obligations credited by such bonds the plaintiff paid out various sums of money for which it sought indemnity from the named indemnitors.

2. On January 14, 1972, a cognovit note in the sum of $564,566.79 was executed by the three named indemnitors. Twelve items of collateral security were given to secure such promissory note. For purposes of this litigation, only one such is of any significance. Item III in the list of collateral securities is stated to be "shares of common stock owned by Edward F. Lowry in Pico, Inc., an Ohio corporation".[1] On the same date the above indemnitors executed a Memorandum Agreement (Plaintiff's Exhibit 1) which contained the following language:

> Hyland, Lowry and Dingledine each agree that he will do no act which will reduce or impair the security listed and that each will cooperate in the preparation and execution of the instruments necessary to perfect the security.

3. Subsequently on October 12, 1972, and on July 3, 1973, other notes were executed by the indemnitors and in each instance Item III of the collateral security was a pledge of shares of common stock owned by Edward F. Lowry in Pico, Inc. (Plaintiff's Exhibits 2 and 3). At no time were the shares of stock ever delivered to the plaintiff and no further written agreement regarding such shares was ever executed by the defendant.

4. Throughout these proceedings defendant was represented by attorney Jacob Myers, both as an individual practitioner and as President and sole shareholder in Kusworm & Myers Company, LPA. Mr. Myers attended the meeting of January 14, 1972, examined the documents signed by his client and actively represented defendant Lowry throughout the time involved in this litigation. Subsequent meetings of the parties were held in July, 1972, September, 1972, and May, 1973. Mr. Myers attended the meetings of September 27, 1972, and May 8, 1973, but did not attend the meeting in July of 1972. Other than a letter in January of 1972 from counsel for plaintiff to Mr. Myers requesting delivery of the shares of stock, no other written demand for such shares was ever made by plaintiff's counsel.

5. On January 8, 1974, Edward Lowry executed a promissory note to Kusworm & Myers Company, LPA, in the sum of $12,555.65 (Joint Exhibit I). To secure such note defendant Lowry likewise signed an agreement pledging 19 shares of stock in Pico Development Company, Inc. to Kus-

---

1. The correct name of the corporation is Pico Development Company, an Ohio corporation. The confusion of names is of no significance and has not been considered further.

worm & Myers Company, LPA, (Joint Exhibit IV) and endorsed at the appropriate place Certificate No. 4 of Pico Development Company (Joint Exhibit II). The stock was subsequently transferred on the books of such company to the name of Kusworm & Myers Company, LPA, and Jacob Myers individually had knowledge of the agreements that had been signed, the reference to the stock in Pico Development Company and the fact that such shares had not been transmitted to plaintiff. The note signed by Edward Lowry to Kusworm & Myers Company, LPA, was given for a valuable consideration, to-wit: attorney fees rendered and to be rendered by both Kusworm & Myers Company, LPA, and Jacob Myers.

7. Pursuant to preliminary injunction issued by this Court on June 26, 1975, physical possession of 19 shares of Pico Development Company still remain with Jacob A. Myers, conditioned upon an injunction against sale, assignment, transfer, hypothecation or other disposition without prior approval of this Court.

### OPINION

■ Were it not for the unusual circumstances surrounding this case, its resolution would be a simple matter. The Memorandum of Agreement and the list of collateral which it incorporates by reference from the note fulfill the requirements of a binding security agreement as defined in § 1309.-01(A)(8) and 1309.14(A).[2] *See, In re Amex-Protein Development Corp.,* 504 F.2d 1056 (9th Cir. 1974). General Insurance Company gave value for this security interest. Lowry had rights in the stock and accordingly the security interest did attach under Ohio Rev.Code § 1309.15(A): But since this was a security interest in an instrument as defined in § 1309.01(A)(7), and General Insurance never took possession of the Pico stock, the security interest was never perfected under § 1309.23(A).

By taking possession of Lowry's stock pursuant to its 1974 pledge agreement, Kus-

worm & Myers, LPA, did perfect their security interest. Under § 1309.31 defendants' rights in the stock prevail over the plaintiff's unperfected security interest, even though they had knowledge of the plaintiff's interest. *In re Smith,* 326 F. Supp. 1311 (D.Minn.1971).

If the integrity of the concept of "good faith" is to be maintained, we do not believe that such a result can be tolerated. Defendant Myers is not merely a disinterested creditor who attempted to protect his commercial interests. He is the plaintiff's attorney and he and his client as witness and obligor respectively signed the memorandum of agreement. Under the circumstances herein, when the parties signed that agreement and executed the note, the plaintiff obtained an equitable lien against the 19 shares of Pico stock superior in priority to the later perfected security interest held by Kusworm & Myers, LPA.

■ Although courts should hesitate to invoke equity powers to disturb the operation of a statute, nothing in the Uniform Commercial Code precludes the imposition of an equitable lien in narrowly-circumscribed situations. *Aetna Casualty & Surety Co. v. Brunken & Son, Inc.,* 357 F.Supp. 290 (D.S.D.1973); *Warren Tool Company v. Stephenson,* 11 Mich.App. 274, 161 N.W.2d 133 (1968); See Ohio Rev.Code § 1301.03.

■ All of the prerequisites to the establishment of an equitable lien by plaintiff are present here: all of the parties intended that the Pico stock then in Lowry's possession be given to the plaintiff as security for the debt; an instrument was signed by the parties memorializing this intent; and the present holder of the stock, Mr. Myers, had knowledge of the agreement. The defendants may not use their own dereliction in failing to turn over the stock to the plaintiffs as a defense of their actions.

2. All references to § 1309 and its subsections are references to the Uniform Commercial Code adopted in Ohio prior to the times involved.

Faced with facts similar to the instant case, the Supreme Court of Ohio imposed an equitable lien on stock which a defendant failed to deliver according to its agreement with the plaintiff stating that:

*What good conscience requires, equity should require*, and while we are able to find no adjudicated case upon parallel facts, we are persuaded from the nature of the transaction, the relations and rights of the parties, good conscience and sound morals among men in every-day business, that Klaustermeyer should have his lien for his loan. (emphasis added)

*Klaustermeyer v. Cleveland Trust Company*, 89 Ohio St. 142, 105 N.E. 278 (1913).

The Court finds this reasoning sound and adopts it *in toto*.

## CONCLUSIONS OF LAW

A. This Court has jurisdiction in accordance with 28 U.S.C. § 1332.

B. Where defendant Edward F. Lowry as first party for consideration agrees to secure a bond issued by plaintiff General Insurance Company of America as second party with collateral security and agrees further not to impair such security, he creates an equitable lien on such collateral in favor of such second party.

C. The Uniform Commercial Code does not preclude the imposition of an equitable lien under appropriate circumstances.

D. Defendants Jacob A. Myers and Kusworm & Myers, LPA, as third party with full knowledge of the agreements referred to in Conclusion of Law B and occupying an attorney-client relationship to first party may not under the circumstances of this case obtain by pledge under the U.C.C. a security interest superior to the equitable lien of second party General Insurance Company of America.

E. The prayer of the amended complaint should be and is hereby GRANTED. Defendant Edward F. Lowry is hereby ordered to pledge the shares of Pico, Inc., referred to herein to plaintiff. Defendant

Jacob A. Myers and Kusworm & Myers, LPA, are hereby directed to endorse, transfer and deliver to plaintiff the shares of Pico, Inc.

Costs to be assessed against defendants.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.