GEORGE TODSEN ET AL., APPELLEES, V.
DAROLD RUNGE ET AL., APPELLEES,
ST. PAUL NATIONAL BANK, A CORPORATION, APPELLANT.
318 N.W.2d 88

Filed April 9, 1982. No. 44380.

Earl D. Ahlschwede of Ahlschwede & Truell, for appellant.

Ronald S. Depue of McDermott, Depue, McDermott & McDermott, for appellees Todsen.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ., and CAPORALE, D.J.

WHITE, J.

Plaintiffs, George and Sarah Todsen, filed this ac-

tion in the District Court for Hall County, Nebraska, claiming a first lien on corn harvested by the defendant Darold Runge on property owned by the plaintiffs. The District Court held that the plaintiffs were entitled to a first lien on the corn grown on the land they leased to Runge. Defendant St. Paul National Bank appeals, claiming a prior perfected security interest in the crops. We reverse.

Plaintiffs owned and leased approximately 160 acres of farmland in Hall County, Nebraska, to the defendant Darold Runge. Plaintiffs and defendant Runge entered into a written lease on December 15, 1978. The lease agreement contained the following language: "The lessors will have a lien on the crops raised on the premises until the final cash payment is made on October 1, 1979." The lease agreement was filed on December 5, 1979, in the office of the register of deeds of Hall County and not in the office of the county clerk as required by Neb. U.C.C. § 9-401 (Reissue 1980). The defendant St. Paul National Bank loaned defendant Runge money to operate his farming operation and received financing statements and security agreements pledging the crops raised on the real estate leased from plaintiffs to the bank as security for the loan. The financing statements received by the bank were filed with the Hall County clerk on May 22, 1979, and with the Nebraska Public Service Commission on May 29, 1979.

Runge harvested the corn crop from plaintiffs' land and delivered it to the defendant Farmers Union Cooperative Elevator Company between October 2 and October 11, 1979. Thereafter, Runge failed to make the final rental payment and also failed to make the loan payments to the bank. Runge filed bankruptcy and the court ordered the corn involved in the case sold. This action involves the priorities between the plaintiffs and the defendant St. Paul National Bank as to the distribution of the proceeds from the sale of the corn.

After trial the court found that St. Paul National Bank had constructive notice of the provisions of plaintiffs' lease and that the security agreement and financing statement given by the defendant Runge to the bank were invalid so far as they pertained to the plaintiffs' interest in the corn.

Defendant St. Paul National Bank assigns as errors: (1) The court erred in finding that the St. Paul National Bank had constructive notice of the lien in the plaintiffs' lease; (2) The court erred in finding that the bank's security agreement and financing statements were inferior to the plaintiffs' interest in the corn grown by defendant Runge on their land; and (3) The court erred in finding that the plaintiffs' lease to defendant Runge created a lien past October 1, 1979.

The first question to be resolved is whether a landlord's lien arising out of a contract is subject to article 9 filing and recording requirements. Neb. U.C.C. § 9-102(1)(a) and (2) (Reissue 1980) provides: "(1) Except as otherwise provided in section 9-104 on excluded transactions, this article applies (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property . . . (2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This article does not apply to statutory liens except as provided in section 9-310."

Neb. U.C.C. § 9-104(b) (Reissue 1980) provides: "This article does not apply . . . to a landlord's lien."

The principal test as to whether a transaction falls within article 9 is whether the transaction was intended to have effect as security. Comment 1 to § 9-102. The question of whether a landlord's lien

arising out of contract is subject to article 9 has not been previously addressed by this court. However, several other states have addressed the issue.

In *In re Florio,* 24 U.C.C. Rptr. 415 (D. R.I. 1978), the court held the exclusion under § 9-104(b) applies only to those landlords' liens which are statutory or which otherwise arise by operation of law. The court held that contractual landlords' liens must meet the filing and recording requirements under article 9.

In *United States (Treasury Dept., I.R.S.) v. Globe Corp.,* 113 Ariz. 44, 546 P.2d 11 (1976), Lee Wong Farms, Inc., leased land from Globe Corporation to grow cotton. When the farmer ran into financial difficulty, both the United States and Globe laid claim to the cotton proceeds, the United States by way of tax liens filed in June and July 1970. Globe claimed the proceeds by way of statutory lien under the laws of Arizona and a contractual lien in the rental agreement dated December 29, 1966. The Supreme Court found Globe's statutory lien had no priority over the tax liens for reasons irrelevant to the case at bar, as no statutory lien exists in Nebraska.

As concerns the contractual lien, the United States admitted that if the contractual lien had been properly recorded, it would have held priority over the tax liens. However, the contractual lien was recorded only in the lease index, and not the index for secured transactions. As such, the lien was not properly recorded as a security interest. Globe claimed landlords' liens were exempt from U.C.C. filing requirements under § 9-104(b). The Arizona court said, "We, however, are of the opinion that *contractual* landlord's liens are not excluded from the filing requirements of the Uniform Commercial Code."

"The principal test as to whether a transaction falls within Article 9 of the Uniform Commercial Code is whether the transaction was intended to

have effect as security. Official Comment 1 to U.C.C. § 9-102 (A.R.S. § 44-3102). Excluded are security interests that arise by statute or common law and not by the consent of the parties. Those cases which have considered the landlord's lien exclusion have concluded that landlord's liens arising out of contract are not excluded from the filing requirements. . . . While statutory liens and liens arising from operation of law are excluded from filing by A.R.S. § 44-3104(2), a lien granted a lessor by contract is not excluded by the Uniform Commercial Code. Since the Code's filing requirements apply, Globe's contractual landlord's lien must have been properly filed to have priority." *Id.* at 50, 546 P.2d at 17.

In *In re Leckie Freeburn Coal Company,* 405 F.2d 1043 (6th Cir. 1969), Leckie Freeburn Coal Company was granted the right to mine coal by the appellants in a lease dated August 1, 1961. The lease provided that all the mining equipment was subject to a lien to secure rent and royalties. The lease was filed in the deed book in the county of the mine's location, but neither it nor a related financing statement was filed as directed by the Uniform Commercial Code. In 1966 Leckie Freeburn went bankrupt and the trustee in bankruptcy and the appellants each claimed priority over each other's liens. The Sixth Circuit held that the Uniform Commercial Code required the separate filing of a financing statement in order to perfect the security interest. If the interest was unperfected at the time of the filing of the petition for bankruptcy, then the trustee's lien would take priority.

The appellants further urged that the filing of the lease provided constructive notice of the lien and a security interest. But the court held one of the purposes of the Uniform Commercial Code's filing requirements was to insure subsequent bona fide purchasers of unencumbered titles, and to allow the

constructive notice argument to stand would frustrate that purpose. Parties searching the financing statements for encumbrances would not be successful and would incur losses if the constructive notice argument stood.

Griggs Road Company leased business premises to King Furniture City, Inc., in the case of *In re King Furniture City, Inc.,* 240 F. Supp. 453 (E.D. Ark. 1965). As part of the lease agreement, King Furniture City gave Griggs Road Company a lien on all inventory placed on the property to secure payment of the rent. The lease was filed in the real estate records, but was not filed under the Uniform Commercial Code's provisions. King encountered financial problems and fell behind in its rent payments. On June 10, 1964, Griggs sought to foreclose its lien. Pursuant to a consent decree entered on June 17, 1964, Griggs was to have a lien upon the proceeds from the sale of certain merchandise. The proceeds from the sales were to be placed in a joint account at a bank naming Griggs and King as owners of the account. The intent of the decree was to have funds paid into the court once all the customers' checks had cleared. While the proceeds were still held by the bank, King declared voluntary bankruptcy and the proceeds were transferred to the trustee in bankruptcy. There was a dispute between Griggs and the trustee as to which lien took priority. The Arkansas federal District Court awarded priority to the trustee, saying at 456-57: "In the alternative, the petitioner contends that the lien retained by it in its lease is excluded from the provisions of the Uniform Commercial Code by Ark. Stats. § 85-9-104(b), supra, which recites, 'This article does not apply * * * to a landlord's lien.' The Trustee counters this contention by taking the position that Ark. Stats. § 85-9-104(b) refers to a statutory landlord's lien—that is, that the words 'Landlord's Lien' are always interpreted as referring to

the lien given landlords by statute just as the expressions 'Mechanics' Liens' and 'Laborers' Liens' are universally ascribed to the liens awarded by law to creditors in these categories.

"This issue can also be stated in another way—that is, does a lien set out in a lease become a 'landlord's lien' under Ark. Stats. § 85-9-104(b) by virtue of the fact that the relationship of landlord and tenant exists between the parties thereto? This Court thinks not, for to permit a lien created by contract in such a manner to be excluded from the requirements of the Uniform Commercial Code would, in many instances, greatly restrict the benefits expected to be obtained from the Uniform Commercial Code in connection with the financing of inventories and lending against accounts receivables. . . . From this viewpoint it also appears that the term 'landlord's lien' as used in the statute must be interpreted as referring to liens created by statute, for the matter of liens on property such as here involved is obviously considered by all of the remainder of the Code as fitting into a general commercial statute."

The case of *Music House v. Theaters,* 10 N.C. App. 242, 178 S.E.2d 124 (1970), also holds that a contractual landlord's lien was not exempt from the Uniform Commercial Code's filing requirements.

In *Bank of North America v. Kruger,* 551 S.W.2d 63 (Tex. Civ. App. 1977), the court held that a perfected security interest was superior to a prior unrecorded contractual lien of a landlord in the same property. In that case the bank had actual knowledge of the lessor's interest in the lessee's property at the time it extended credit and requested the lessor to subordinate his interest. The court ruled that unless the bank showed some lack of "good faith" as defined in the statute, actual knowledge had no bearing on the decision.

We are in accord with these cases insofar as they interpret § 9-104(b) of the Uniform Commercial Code

as applying only to statutory landlords' liens. Since the plaintiffs claim a contractual landlord's lien, they were required to comply with the filing requirements of article 9 in order to perfect a security interest.

If we assume that the plaintiffs have complied with the provisions of article 9, the next question is which of the security interests, plaintiffs' or defendant bank's, has priority?

Neb. U.C.C. § 9-312 (Reissue 1980) contains the rules of priority between conflicting security interests in the same collateral. Section 9-312(5)(a) provides in part: "Conflicting security interests rank according to priority in time of filing or perfection. . . ."

Section 9-312(5) is a "pure race" type statute. That is, the one who wins the "race" to the courthouse to file is superior without regard to the state of his knowledge. See White & Summers, Uniform Commercial Code § 25-4 (2d ed. 1980). Section 9-312(5) says nothing about lack of knowledge of a prior unrecorded security interest as a prerequisite for its operation. Under this section, the secured party who is first to perfect or file will have priority over all unperfected security interests even though he had actual or constructive knowledge of a prior unperfected security interest.

Several commentators take the view that knowledge is relevant and that the courts should read a knowledge element into § 9-312(5). See Nickles, *Rethinking Some U.C.C. Article 9 Problems - Subrogation; Equitable Liens; Actual Knowledge; Waiver of Security Interests; Secured Party Liability for Conversion under Part 5,* 34 Ark. L. Rev. 79 (1980-81); Comment, *Knowledge and Priorities under Article Nine: A Proposed Rule Change in the "Race of Diligent Creditors,"* 47 U. Colo. L. Rev. 467 (1975-76); Felsenfeld, *Knowledge as a Factor in Determining Priorities Under the Uniform Commercial*

*Code,* 42 N.Y.U. L. Rev. 246 (1967).

The arguments for a knowledge factor center around three points: First, precode law for determining priorities between secured creditors provided that where a later encumbrancer knew of an earlier attached but unperfected interest at the time he gave value and took a security interest, he could not subordinate that earlier interest by filing first. The second argument advanced is that Neb. U.C.C. § 1-203 (Reissue 1980) imposes an obligation of good faith in all commercial transactions and a subsequent encumbrancer is not acting in good faith when he takes a security interest in collateral that he knows is already pledged as security to another. The third argument is that § 9-401(2), which provides that a filing made in good faith in an improper place or not in all the required places is effective against anyone who claims a security interest in the same collateral and knew of the contents of the financing statement of the prior misfiled interest, should be applied to persons who do not file at all.

It is alleged under the first argument that the drafters' silence on the knowledge factor in § 9-312(5) was unintentional; therefore, it is up to the courts to read in a knowledge factor so precode law will not be silently overruled. First, it is not up to the courts to legislate through their decisions. Second, the Comments to Neb. U.C.C. § 9-312(5), although not law, suggest that knowledge is irrelevant. Example 1 under Comment 5 states: "It makes no difference whether or not A knew of B's interest when he made his advance." Example 2 under the same Comment states: "Whichever secured party first perfects his interest (by taking possession of the collateral or by filing) takes priority and it makes no difference whether or not he knows of the other interest at the time he perfects his own." Example 5 states: "A has priority over B both as to the February 1 and as to the April 1 advance and it

makes no difference whether or not A knows of B's intervening advance when he makes his second advance."

As to the third argument, we agree that it makes no difference if a secured party files in the wrong place or not at all. In either situation, no notice is given to a subsequent encumbrancer who looks in the correct filing office. However, the Legislature, in its wisdom, chose to award a secured party who exercises some diligence in perfecting his interest, even though he files in the wrong place. Again, the statute, on its face, is clear. We will not read in an interpretation that is not warranted.

The second argument advanced stands on the best ground. This question is basically a factual one. It would be very difficult for this court to set a standard upon which it could be determined whether a creditor acted in good faith. There is a fine line between acting in good faith and exercising good business judgment in many of these situations. Granted the principles of law and equity shall supplement the provisions of the Uniform Commercial Code under Neb. U.C.C. § 1-103 (Reissue 1980), we are reminded that § 1-102(1) provides: "This act shall be liberally construed and applied to promote its underlying purposes and policies." Those purposes and policies as enunciated in § 1-102(2) are "(a) to simplify, clarify and modernize the law governing commercial transactions; . . . (c) to make uniform the law among the various jurisdictions." We are unwilling at this time to saddle a good faith requirement on § 9-312(5). If the drafters wanted a good faith requirement in the statute, they would have put it there. Further, to do so would bring on unwarranted lawsuits by disappointed secured parties and would do nothing to promote certainty in commercial transactions.

Several courts in other jurisdictions have previously passed on the knowledge issue. *In re Smith,*

326 F. Supp. 1311 (D. Minn. 1971); *First Nat. Bank & T. Co. of Vinita, Okl. v. Atlas Credit Corp.,* 417 F.2d 1081 (10th Cir. 1969); *National Bank of Sarasota v. Dugger,* 335 So. 2d 859 (Fla. App. 1976); *Madison Nat'l Bank v. Newrath,* 261 Md. 321, 275 A.2d 495 (1971); *Bloom v. Hilty,* 427 Pa. 463, 234 A.2d 860 (1967); *Noble Co. v. Mack Fin. Corp.,* 107 R.I. 12, 264 A.2d 325 (1970); *Shallcross v. Community State Bank & Trust,* 180 N.J. Super. 273, 434 A.2d 671 (1981); *In re Gunderson,* 4 U.C.C. Rptr. 358 (S.D. Ill. 1967); *Production Credit Ass'n of Minot v. Melland,* 278 N.W.2d 780 (N.D. 1979); *Berga v. Amit Intern. Trade, Ltd.,* 511 F. Supp. 432 (E.D. Pa. 1981). All of these jurisdictions adopt the position that knowledge is irrelevant to the operation of § 9-312(5).

The circumstances of this case do not warrant adopting the good faith position taken in *General Ins. Co. of America v. Lowry,* 412 F. Supp. 12 (S.D. Ohio 1976), *aff'd* 570 F.2d 120 (6th Cir. 1978), *Thompson v. United States,* 408 F.2d 1075 (8th Cir. 1969), and *In re Davidoff,* 351 F. Supp. 440 (S.D. N.Y. 1972).

We believe the statute is clear. Section 9-312(5) was adopted to promote certainty in commercial transactions by placing reliance on the filing records. This statute requires a secured party to take the diligence to perfect his security interest. If he fails to perfect, then he runs the risk of having his interest subordinated.

Accordingly, we find that the defendant St. Paul National Bank's security interest in the crops has priority over plaintiffs' contractual landlord's lien.

The judgment of the District Court is reversed.

REVERSED.