(717 P.2d 1064)
No. 57,976

J. I. CASE CREDIT CORPORATION, a Wisconsin corporation, *Appellee*, v. CLARENCE FOOS, *Defendant*, and THE BAZINE STATE BANK, *Appellant*.

Opinion filed April 24, 1986.

*Dennis J. Keenan*, of Keenan Law Firm, P.A., of Great Bend, for the appellant.

*Ivan D. Krug*, of LaCrosse, for the appellee.

Before BRISCOE, P.J., RALPH M. KING, JR., District Judge, assigned, and DAVID S. KNUDSON, District Judge, assigned.

KNUDSON, J.: This action was brought to determine priority of security interests in farm equipment. The competing secured creditors are J.I. Case Credit Corporation (Case) and The Bazine State Bank (Bank). The debtor is Clarence Foos. The equipment consists of a Case tractor and a Noble undercutter.

Foos had been a regular customer of the Bank for years. As early as 1966, the Bank filed a UCC financing statement which provided for a security interest in after-acquired farm equipment. From time to time, appropriate UCC continuation statements were filed.

On May 30, 1980, Foos purchased the Case tractor and Noble undercutter from Rural Equipment, Inc., of LaCrosse, Kansas (Rural Equipment). This was a secured transaction. Rural Equipment filed a financing statement with the Ness County Register of Deeds on June 18, 1980. Rural Equipment subsequently assigned its rights in the transaction to Case.

In July 1981 Foos failed to make a full installment payment due Case. An extension was agreed upon with that payment to be

included when the next annual installment was due. In July 1982 Foos was unable to meet his payment obligations under the purchase agreement or the extension. Case insisted that the account be brought current or that Foos surrender the collateral. Foos turned to the Bank for help. Its loan officer, Larry Stieben, conferred with a Case representative who explained the status of Foos' account, including the balance owed and the number of annual installments remaining to be paid. In September 1982 the Bank loaned Foos sufficient funds to bring the account current.

When Case received the delinquent payment from Foos, its computerized billing and account system erroneously reported the entire contract was paid in full. The contract was stamped "paid" and mailed to Foos. Case also filed a UCC termination statement on November 24, 1982, terminating its security interest in the tractor and undercutter.

In December 1982 Foos met with Stieben to request a loan. Foos advised Stieben that Case no longer had a security interest in the purchased equipment as the contract had been paid. Stieben requested documentation and Foos produced the cancelled contract stamped "paid" with a letter from Case stating the promissory note had been paid in full and Case had terminated its security interest in the equipment. Stieben then verified with the Ness County Register of Deeds that Case had filed a termination statement. Thus informed, the Bank did enter into the loan transaction with Foos, taking a security interest in the tractor and undercutter. A UCC financing statement was filed.

In February 1983 Case discovered the incorrect entries to the Foos account and notified him the contract had not been paid in full. Case also filed a new financing statement with the register of deeds. The statement was not signed by Foos.

Foos failed to make any further payments and Case repossessed the equipment. Foos then filed an action against Case alleging unlawful repossession and criminal trespass. The instigation of that action caused Case to file this lawsuit against Foos and the Bank for judicial determination of the validity and priority of the competing security interests in the equipment.

The district court, upon written findings of fact and conclusions of law, entered judgment in favor of Case and against the Bank. It is from this judgment the Bank now appeals.

The Bank raises three issues in this appeal: (1) Whether Case

has a perfected security interest in the farm equipment; (2) whether the Bank has a perfected security interest in the farm equipment; and (3) whether the trial court's finding that the Bank did not exercise good faith is supported by substantial competent evidence.

It is noted that all of the above issues, if not issues of fact, are certainly mixed issues of fact and law. This would normally limit appellate review to deciding whether the trial court's findings are supported by substantial evidence. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 697 P.2d 52 (1985). Under such circumstances the evidence must be reviewed in the light most favorable to the party prevailing below. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 624 P.2d 420 (1981). However, as will soon be evident, we are unable to proceed with appropriate review under the issues as presented. While review is ordinarily restricted to the issues presented by the litigants, an obvious exception is when plain error is evident or fundamental rights are at issue. The appellate court may then consider such unraised issues. Moreover, appellate review of conclusions of law is unlimited. *Baker v. R. D. Andersen Constr. Co.*, 7 Kan. App. 2d 568, 644 P.2d 1354, *rev. denied* 231 Kan. 799 (1982). With these principles in mind, we return to the factual record.

At the time Foos entered into the secured transaction with Rural Equipment, the seller failed to perfect its purchase money security interest under K.S.A. 84-9-312(4) as a financing statement was not filed within the required ten days. Rural Equipment did file a financing statement and thus perfected its security interest by filing on June 18, 1980. Conversely, the record is clear that at the time of Foos' purchase and through June 18, 1980, the Bank had no underlying security interest supporting its previously filed financing statement. K.S.A. 84-9-303 contemplates the existence of a security agreement before a security interest is perfected. Based upon these circumstances, we conclude Case had a perfected security interest in the tractor and undercutter from June 18, 1980, until its termination statement was filed on November 24, 1982, superior to any interest or claim asserted by the Bank.

What was the effect of Case's improvident filing of a termination statement? In our opinion, under K.S.A. 84-9-404, Case's security interest was at that moment no longer perfected. Case

could, of course, continue to enforce its security interest in the equipment as long as only its debtor Foos was involved. *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 563 P.2d 414 (1977). However, a secured creditor with a perfected security interest must be given priority under K.S.A. 84-9-312(5)(a), which states:

"Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection."

It would thus appear the Bank's security interest perfected in December 1982 would be entitled to priority but for the trial court's finding the Bank did not act in good faith. The trial court, with implicit agreement of the parties, reasoned that Foos held voidable title to the equipment when he gave the Bank a security interest in the equipment. The court further reasoned the Bank was a purchaser, that K.S.A. 84-2-403(1) applied, and our Supreme Court's decision in *Iola State Bank v. Bolan*, 235 Kan. 175, 679 P.2d 720 (1984), was supportive authority.

First, we do not believe Foos held voidable title to the equipment. Rather, he held title subject to the unperfected security interest of Case. K.S.A. 84-2-401(2) states:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest . . . ."

We submit that full title passed to Foos at the time of sale in 1980.

In *Iola State Bank*, the sellers' delivery of grain was conditioned upon payment. Obviously, the grain elevator at best had only voidable title. Clearly it is distinguishable from the case at bar. For another case illustrative of voidable title, see *Dick Hatfield Chevrolet, Inc. v. Bob Watson Motors, Inc.*, 238 Kan. 41, 708 P.2d 494 (1985).

Secondly, the trial court's application of K.S.A. 84-2-403(1) ignores the fact this is a priority dispute between competing security interests and therefore is to be resolved under article 9 of the Code, not article 2. This conclusion is supported by specific provisions in the Code. K.S.A. 84-9-113 states in material part: "A security interest arising solely under the article on sales

(article 2) is subject to the provisions of this article." K.S.A. 84-9-202 provides article 9 is applicable to secured transactions "whether title to collateral is in the secured party or in the debtor."

Therefore, we conclude K.S.A. 84-9-312 sets forth the statutory rules that must be considered in determining the priority of competing security interests in collateral. In short, this statute was intended to be and is a "pure race" type statute. This means the secured creditor who wins the "race" to the appropriate filing office has priority without regard to the prevailing creditor's state of mind and knowledge. The Bank, having perfected its security interest in the equipment, is entitled to priority irrespective of its knowledge of Case's unperfected security interest in the same equipment. Any other conclusion would cause confusion and uncertainty in commercial transactions, undoing the clarity and preciseness intended under article 9 of the Code. An excellent opinion resolving this issue is *Todsen v. Runge,* 211 Neb. 226, 318 N.W. 2d 88 (1982). In *Todsen,* under their comparable statute, the Supreme Court of Nebraska came to the same conclusion we have reached. Also cited therein are decisions from several other jurisdictions, all concluding knowledge or good faith is irrelevant in determining priority of security interests under article 9 of the Code.

We need not and do not decide the effect of Case's effort to again perfect its security interest with the 1983 filing of a financing statement to remedy its prior improvident termination. Based upon our previous analysis and conclusions, such filing could at best have had only prospective effect.

Accordingly, we find the trial court erred in the following particulars: (1) K.S.A. 84-2-403(1) should not have been applied; and (2) K.S.A. 84-9-312 is applicable but does not require good faith by the secured creditor as it is a "pure race" statute.

The judgment of the trial court is reversed and the case is remanded for entry of judgment consistent with this opinion.