AG SERVICES OF AMERICA, INC., AN IOWA CORPORATION, APPELLEE, v. DARRELL E. EMPFIELD, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND C.M.R., INC., A NEBRASKA CORPORATION, THIRD-PARTY DEFENDANT, APPELLEE.

587 N.W. 2d 871

Filed January 15, 1999.   No. S-97-1097.

W. Gerald O'Kief for appellant.

Tim W. Thompson, of Kelley, Scritsmier & Byrne, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Ag Services of America, Inc. (Ag Services), brought this action for conversion against Darrell E. Empfield after Empfield sold certain corn crops that were stored on his property. The crops were grown on Empfield's land by C.M.R., Inc., a debtor of Ag Services. Ag Services claimed its security interest in the corn crops was superior to Empfield's claim pursuant to a lease agreement with C.M.R. The trial court granted Ag Services' motion for summary judgment, and Empfield appeals.

## SCOPE OF REVIEW

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Zimmerman v. FirsTier Bank, ante* p. 410, 585 N.W.2d 445 (1998).

## FACTS

On November 18, 1994, Ag Services loaned C.M.R. the principal sum of $240,000. Contemporaneously, C.M.R. gave Ag Services a security agreement covering, but not limited to, all of C.M.R.'s farm products, inventory, annual and perennial crops, and stored or harvested crops.

On December 19, 1994, Ag Services filed financing statements in the office of the Brown County clerk, which statements listed C.M.R. as the debtor and Ag Services as a secured party and described real estate owned by Empfield as the land upon which C.M.R.'s crops were growing or were to be grown.

On April 5, 1995, C.M.R. leased certain farmland located in Brown County from Empfield for the amount of $53,541, which was payable in two installments. The written lease agreement specified that to secure performance of the terms and conditions of the lease, Empfield had a right to a chattel mortgage upon all or any part of the crops growing or gathered on the premises during the term of the lease. The record does not show that

Empfield ever made a filing in the office of the Brown County clerk concerning the lease agreement.

Following the corn harvest in late November or early December 1995, C.M.R. placed the corn in bins owned by Empfield. According to Clark Keim, the president and sole shareholder of C.M.R., some of the 1994 crop was still stored in Empfield's bins. C.M.R. paid Empfield the first rental installment, but failed to pay the second installment in the amount of $27,750. On December 23, 1995, in order to pay the defaulted rent and other amounts allegedly due, Empfield sold the corn harvested by C.M.R. that was stored in bins located on Empfield's property. Empfield received $32,175 from the sale.

C.M.R. was unable to fully pay the balance due on the promissory note to Ag Services, and the balance was carried forward to a 1996 operating note, which was executed March 26, 1996, in an amount greater than $32,175. On August 7, Ag Services commenced suit against Empfield, alleging, inter alia, that Empfield had unlawfully converted the corn in which Ag Services had a perfected security interest superior to any interest of Empfield's. At the time the action was commenced, there was due and owing from C.M.R. to Ag Services $133,217.45 plus interest.

The trial court entered summary judgment in favor of Ag Services, and Empfield appeals.

## ASSIGNMENT OF ERROR

Empfield claims that the trial court erred in entering summary judgment in favor of Ag Services.

## ANALYSIS

This is a conversion action brought by Ag Services against Empfield. When property is subject to a security interest, an exercise of dominion or control over the property that is inconsistent with the rights of the secured party constitutes, as to that secured party, a conversion of the property. *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997). In its first theory of recovery, Ag Services alleged that it had a perfected security interest by virtue of its promissory note and security agreement and the financing statements filed in the

office of the Brown County clerk; that Empfield did not have a perfected security interest in the corn; and that Empfield's interest, if any, was subordinate to Ag Services' interest. In its second theory of recovery, Ag Services alleged that Empfield's interest, if any, was subordinate by virtue of a subordination agreement allegedly signed by Empfield.

Ag Services' first theory of recovery relies on article 9 of the Nebraska Uniform Commercial Code (U.C.C.). Neb. U.C.C. § 9-312(5) (Reissue 1992) states that unless governed by a special priority under another subsection, priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

(b) So long as conflicting security interests are unperfected, the first to attach has priority.

Section 9-312(5) is a "pure race" type statute. See *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982). Under § 9-312(5), the secured party who is first to perfect or file his or her security interest will have priority over all unperfected security interests even though such party had actual or constructive knowledge of a prior unperfected security interest. *Todsen v. Runge, supra.* Section 9-312(5) was adopted to promote certainty in commercial transactions by placing reliance on the filing records. It requires a secured party to exercise diligence to perfect his or her security interest. If a party fails to perfect, then the party runs the risk of having his or her interest subordinated. *Todsen v. Runge, supra.*

In *Todsen*, we determined that § 9-312(5) governed the priority between the tenant farmer's creditor and the farmer's landlords. We explicitly held that a contractual landlord's lien must comply with the filing requirements of article 9 of the U.C.C. in order to perfect a security interest. Because the creditor in that case was first to file and perfect its security interest, it had priority over the landlords' lien. See, also, *McCoy v. Steffen*, 227

Neb. 72, 416 N.W.2d 16 (1987) (security interest of tenant farmers' creditor had priority over interest of tenants' landlord where creditor's financing statement was filed earlier).

Similarly, in *Lone Oak Farm Corp. v. Riverside Fertilizer*, 229 Neb. 548, 428 N.W.2d 175 (1988), a landlord leased farmland to a tenant for the purpose of growing crops. The lease agreement provided that the landlord would have a security interest in the crops to be grown on the land. The landlord did not file the agreement in the appropriate place and manner. In order to obtain certain goods and services necessary to produce crops, the tenant subsequently entered into an agreement with a fertilizer company. The company provided certain goods to the tenant, and the tenant provided the company with a security interest covering all crops and proceeds of crops to be grown on the subject property. The company filed a financing statement and a security agreement.

We held that in the absence of an agreement to the contrary, the priority of competing interests in the landlord and the fertilizer company was determined by article 9 of the U.C.C. The landlord argued that despite his failure to file a financing statement, he was entitled to an equitable lien under the terms of the lease, citing Neb. U.C.C. § 1-103 (Reissue 1980), which provided that unless displaced by particular provisions, equity principles supplement the U.C.C. We concluded that even assuming the landlord was entitled to an equitable lien, it would still be an unperfected security interest under the U.C.C. and that, therefore, the company's security interest took priority over the landlord's interest.

It is undisputed that on January 10, 1994, Ag Services made a filing covering the corn grown on Empfield's land and that the filing complied with Neb. U.C.C. § 9-402 (Supp. 1993). It is also undisputed that Empfield never made a filing which covered his interest in the crop. Thus, it is clear that under § 9-312(5), Ag Services' interest has priority over Empfield's unperfected interest.

Empfield does not deny that under § 9-312, Ag Services' interest takes priority over his unperfected interest. Rather, he argues that this court should recognize his rights as superior under the principles of equity and fairness in order to avoid

unjust enrichment. Generally, unjust enrichment is not argued as a defense to an action because a party cannot recover for unjust enrichment until the allegedly inequitable benefits have been received and retained. See, *In re Estate of Krueger*, 235 Neb. 518, 455 N.W.2d 809 (1990); *Professional Recruiters v. Oliver*, 235 Neb. 508, 456 N.W.2d 103 (1990). Empfield argues that the trial court erred in granting Ag Services summary judgment because the court should have recognized that to do so would result in unjust enrichment. In other words, Empfield attempts to use the doctrine of unjust enrichment as an affirmative defense. See *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998) (essence of affirmative defense is to concede that while plaintiff otherwise may have good cause of action, cause of action no longer exists because some statute or rule permits defendant to avoid liability for acts alleged). An affirmative defense must be pleaded to be considered in the trial court and on appeal. *Nebraska Pub. Emp. v. City of Omaha*, 244 Neb. 328, 506 N.W.2d 686 (1993). Empfield did not plead unjust enrichment, and thus, this argument has been waived.

Empfield also asks this court to reconsider relevant law because "it is only reasonable and fair that he should be entitled to satisfy his claim for unpaid rent by selling crop which was harvested on his land, placed in his possession and stored there." Brief for appellant at 10. The priorities in this case are governed by statute. While in other circumstances Empfield may have been entitled to satisfy his claim for rent by selling the crops on his property, he is not entitled to do so where another party has a prior perfected security interest in the crops.

Finally, Empfield argues that summary judgment was inappropriate because there remains an issue of fact as to whether he signed an agreement subordinating his interest in the crop to the interest of Ag Services. This issue is not material to the case because under § 9-312(5), the security interest of Ag Services is superior regardless of whether there was a signed subordination agreement.

## CONCLUSION

We find that Empfield's assignment of error is without merit, and we affirm the summary judgment entered by the trial court.

AFFIRMED.