MELISSA WILLIAMS, BY AND THROUGH HER MOTHER AND GUARDIAN, RITA WILSON, APPELLEE AND CROSS-APPELLANT, V. GERING PUBLIC SCHOOLS, ALSO KNOWN AS SCHOOL DISTRICT NO. 79-0016, APPELLANT AND CROSS-APPELLEE, AND NEBRASKA DEPARTMENT OF EDUCATION, APPELLEE.

463 N.W.2d 799

Filed December 7, 1990.    No. 88-800.

Donn C. Raymond, of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

Randal B. Brown, of Nebraska Advocacy Services, for appellee Williams.

Robert M. Spire, Attorney General, and Harold I. Mosher for appellee Department.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Appellee Melissa Williams is a multihandicapped child, as defined by Neb. Rev. Stat. § 79-3309(6) (Reissue 1987), who was born on November 15, 1971. Rita Wilson, who is Melissa's mother and guardian, initiated this action by filing a petition with the Nebraska Department of Education (Department) against the Gering Public Schools, also known as School

District No. 79-0016 (District), and the Department, alleging that Melissa had been denied a free appropriate public education. The subject of the dispute was an individual education plan (IEP) in which the District recommended that Melissa receive a 9-month school year at Educational Service Unit No. 13 (ESU-13) and no residential placement.

Wilson's amended petition, filed on June 1, 1987, alleged that residential placement at the Martin Luther Home, Inc., in Mitchell, Nebraska, was necessary for Melissa and that the Child Development Center (CDC) in Scottsbluff, Nebraska, was also more appropriate than ESU-13 because CDC provided a 12-month program designed to meet Melissa's special educational needs. Wilson thus proposed that Melissa reside at the Martin Luther Home in Mitchell and be educated at CDC in Scottsbluff.

In its answer, the District denied that Melissa required residential placement in order to receive a free appropriate public education and further alleged that a 12-month school year was not necessary and that ESU-13 was an appropriate educational placement. The Department denied in its answer that residential placement was necessary or appropriate.

Pursuant to Neb. Rev. Stat. § 43-662 (Cum. Supp. 1986), later amended and codified as Neb. Rev. Stat. § 79-3350 (Reissue 1987), the Department appointed a hearing officer, and a 3-day administrative hearing began on September 2, 1987.

The issues presented at the administrative hearing were (1) whether Melissa was entitled, as a part of her special educational services, to a residential placement, and, if so, the location of that residential placement, and (2) the length of the school year for Melissa and where her schooling should take place.

The hearing officer filed his final decision and order on September 25, 1987, together with an order nunc pro tunc dated September 29, 1987, denying Wilson's request for residential placement as a part of Melissa's individualized special education program, but ordering the District to prepare an individualized special education program providing for Melissa's placement in a 12-month program at CDC. Because

the hearing officer found that residential care was not a necessary part of Melissa's IEP, Wilson's petition was dismissed as to the Department.

The District then filed a petition for judicial review, and Wilson filed an answer and cross-petition for judicial review. In her cross-petition, Wilson named both the District and the Department as parties. On August 5, 1988, the district court for Scotts Bluff County entered a final order affirming the decision of the hearing officer. The District filed a motion for new trial on August 12, 1988, and Wilson filed a motion for new trial on August 29, 1988. Both motions were overruled on August 29, 1988. The District filed its notice of appeal on September 21, 1988, and Wilson filed her notice of appeal on September 26, 1988.

In its appeal, the District contends the district court erred (1) in affirming the hearing officer's final decision and order requiring a 12-month school year and placement at CDC, (2) in finding that the hearing officer's order requiring 12-month placement was supported by the evidence, and (3) in finding that the hearing officer's order requiring placement at CDC was supported by the evidence.

In her cross-appeal, Wilson contends the district court erred (1) in finding that Melissa did not require a residential educational placement in order to benefit from her special education program, (2) in failing to order that a residential educational placement was a necessary component of Melissa's individualized special education program, and (3) in dismissing the Department as a party to the action.

In its brief, the Department claims it is no longer a proper party to these proceedings, and it has filed a motion to dismiss the cross-appeal for want of jurisdiction. The Department contends this court lacks jurisdiction to determine issues concerning the Department because Wilson did not timely file her notice of appeal in the district court.

The record shows that the district court rendered its final decision on August 5, 1988, but that Wilson's motion for new trial was not made until August 29, 1988, more than 10 days after the court's final order. In *In re Interest of C.M.H. and M.S.H.*, 227 Neb. 446, 448, 418 N.W.2d 226, 227 (1988), we

said:

> A motion for a new trial must be made within 10 days after the complained-of order was entered, except where unavoidably prevented. Neb. Rev. Stat. § 25-1143 [Reissue 1989]. It is required by Neb. Rev. Stat. § 25-1912 [Reissue 1989] that in order to vest this court with jurisdiction a notice of appeal must be filed within 30 days of the entry of the final order or the overruling of a motion for a new trial. The timely filing of such notice of appeal is jurisdictional.

In general, the timely filing of a motion for new trial extends the time within which a notice of appeal must be filed to a period of 30 days following the overruling of that motion. *In re Interest of C.M.H. and M.S.H., supra*. However, a motion for new trial which is not filed within the time constraints required by statute is a nullity and does not extend the time within which a notice of appeal may be filed. *Id*. See, also, *In re Interest of B.M.H.*, 233 Neb. 524, 446 N.W.2d 222 (1989).

This case presents a different question, however, because it involves the filing of a cross-appeal. A cross-appeal, as distinguished from the perfection of a direct appeal, exists in this state only by virtue of the rules of this court. There is no statutory authorization for the procedure. *Edquist v. Commercial Sav. & Loan Assn.*, 191 Neb. 618, 217 N.W.2d 82 (1974). Therefore, in order to perfect a cross-appeal, an appellee need comply only with the rules of the Nebraska Supreme Court. *Id*.

At the time Wilson's right to cross-appeal vested, Neb. Ct. R. of Prac. 1E (rev. 1986) provided: "The filing of an appeal shall vest in an appellee the right to a cross-appeal, *but only as to the appellant or appellants*. The cross-appeal need only be asserted in appellee's brief . . . ." (Emphasis supplied.) Rule 1E was amended on October 24, 1988, and now provides: "The proper filing of an appeal in the Supreme Court shall vest in an appellee the right to a cross-appeal *against any other party to the appeal*. The cross-appeal need only be asserted in the appellee's brief as provided by rule 9D(4)." (Emphasis supplied.) Neb. Ct. R. of Prac. 1E (rev. 1989).

Our rule in effect prior to October 24, 1988, and two cases

decided under the old rule are controlling in this matter. In *Buffalo County v. Richards*, 212 Neb. 826, 326 N.W.2d 179 (1982), this court held that a cross-appeal may not be asserted by one appellee against another appellee, and dismissed the cross-appeal because the cross-appellant sought no relief against the appellant in the case. Similarly, in *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983), we again noted that an appellee could not cross-appeal against another appellee, but we elected to treat what the plaintiff-appellee denominated a cross-appeal as an appeal because the plaintiff properly filed a notice of appeal against the other appellee. See, also, *Western Fertilizer v. BRG*, 228 Neb. 776, 424 N.W.2d 588 (1988).

The record in this case shows that the appeal of the District was timely filed and vested in Wilson the right to cross-appeal, but only against the appellant. Because the District was the only appellant in this case, it was necessary for appellee Wilson to timely file a notice of appeal to preserve her rights against the Department, another appellee. See *Maricle v. Spiegel, supra*. Since Wilson failed to do so, the Department's motion to dismiss the cross-appeal as to the Department for lack of jurisdiction is sustained.

Dismissal of the Department does not result in dismissal of Wilson's cross-appeal in its entirety, because Wilson has also cross-appealed against the District, appellant herein, and that procedure was authorized by the case law and rules of this court in effect at the time Wilson's right to cross-appeal vested.

Since the District had the duty to develop a proper IEP for Melissa, Wilson is entitled to contend that the IEP must include residential placement. The issue is not resolved by the dismissal of the Department and will be discussed later herein.

The District's petition for judicial review was filed pursuant to Neb. Rev. Stat. § 79-3354 (Reissue 1987), which provides in part:

(5) Judicial review shall be conducted by the [district] court without a jury. The court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party, base its decision on the preponderance of the evidence, and grant such relief as the court determines is appropriate.

(6) An aggrieved party may secure a review of any final judgment of the district court under this section by appeal to the Supreme Court. Such appeal shall be taken in the manner provided by law for appeals to the Supreme Court in civil cases and shall be heard de novo on the record.

In a trial de novo on the record, the Supreme Court resolves issues of fact independently of the findings of the trial court; however, where the evidence is in conflict, it considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of D.S. and T.S., ante* p. 413, 461 N.W.2d 415 (1990).

In this case, therefore, the record consists of the record of the administrative hearing together with the additional evidence presented by the parties in the district court. The issues before the court are (1) the length of the school year for Melissa and where her schooling shall take place, and (2) whether Melissa is entitled, as a part of her special educational services, to a residential placement, and, if so, the location of that residential placement.

The record shows that Melissa Williams was born on November 15, 1971. Her family first became aware Melissa was disabled when she was approximately $2^1/_2$ weeks old and started to have seizures. It is likely that Melissa has been disabled since birth, except for certain heart and liver problems which have since developed.

Melissa has severe mental and physical handicaps. She is profoundly mentally retarded, with a current developmental age of 6 months or less. She has congenital blindness in both eyes, but does show some ability to track a light. Melissa has spastic quadriplegia, with some voluntary movement of her right arm and hand. She also has a dislocated left hip, severe scoliosis, contractions in both hands and feet, and cerebral palsy. As a result of these disabilities, she is nonambulatory, essentially is nonverbal, and requires total assistance with feeding and hygiene. Her senses of hearing, touch, taste, and smell are not impaired. At the time of the district court hearing, Melissa weighed approximately 50 pounds.

Melissa's family moved from Sidney, Nebraska, to Gering in 1977. Prior to this time, Wilson testified, Melissa had received

special education services in San Diego and El Cajon, California, and in Sidney, Nebraska. In July 1977, Melissa began to receive special educational services through the District and has received special educational services from the District since then.

In July 1977, Melissa was enrolled at CDC in Scottsbluff. She remained at CDC until August 1978, when her placement was changed to ESU-13 as a result of an individual educational program conference held by the District. While at ESU-13, Melissa had a 9-month school year and resided at home. Her mother, Wilson, acted as Melissa's primary care provider.

In August 1985, in response to her dissatisfaction with Melissa's educational process at ESU-13, as well as to the strain placed upon the family caused by the amount of care required for Melissa, Wilson arranged for Melissa to be placed in the Bethphage Mission (Bethphage) at Axtell, Nebraska, located approximately 270 miles from Gering. Bethphage is a licensed intermediate care facility for the mentally retarded and is the westernmost such facility in Nebraska.

Melissa remained at Bethphage until April 1987. While she was at Bethphage, the District contracted with and paid Bethphage for Melissa's educational program, which provided a 12-month school year. Melissa's residential placement was paid through federal title 19 funding.

During the fall of 1986, Bethphage adopted a goal of reducing its patient load by approximately 60 patients. The main purpose of this goal was to have children educated as close to their homes as possible. Bethphage did not terminate Melissa's placement. Instead, Wilson unilaterally removed Melissa from residential care at Bethphage and placed her at the Martin Luther Home in Mitchell, Nebraska, where she has resided to date.

On May 4, 1987, another meeting was held for the purpose of determining Melissa's educational placement. Attending the meeting were Wilson, representatives of the District and the Department, and others. By agreement of the parties, Melissa was placed at ESU-13 for a 30-day evaluation. After the evaluation, an IEP was proposed for Melissa which provided for a 9-month school year at ESU-13 with no residential care.

Because of her dissatisfaction with this proposal, Wilson unilaterally placed Melissa at CDC. Pursuant to Neb. Rev. Stat. § 43-661 (Cum. Supp. 1986), later amended and codified as Neb. Rev. Stat. § 79-3349 (Reissue 1987), on June 1, 1987, Wilson filed an amended petition with the Department, contesting the special education program and placement which the District proposed for Melissa.

We first consider the appropriate length of the school year for Melissa. In its appeal, the District contends that Melissa is entitled only to a 9-month educational program offered by ESU-13, rather than a 12-month program at CDC.

The education of handicapped children is governed by both federal and state legislation. As this court noted in *Adams Central School Dist. v. Deist*, 214 Neb. 307, 334 N.W.2d 775 (1983), *supp. op.* 215 Neb. 284, 338 N.W.2d 591, *cert. denied* 464 U.S. 893, 104 S. Ct. 239, 78 L. Ed. 2d 230, the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401 et seq. (1976), now the Education of the Handicapped Act, 20 U.S.C. §§ 1400 et seq. (1988), represents the federal body of law. The care and education of handicapped children are also provided for at the state level pursuant to the Special Education Act, Neb. Rev. Stat. §§ 79-3301 et seq. (Reissue 1987).

The requirements of the federal act are discussed at length in *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). As we noted in *Adams Central School Dist. v. Deist, supra*, the act is a funding statute under which the federal government supplies financial assistance to the states for the education of handicapped children. By accepting federal funds, the state implicitly agrees to meet certain criteria and requirements. The act requires each state that accepts these funds to provide all handicapped children with a "free appropriate public education." 214 Neb. at 314, 334 N.W.2d at 780; 20 U.S.C. § 1412(1).

The term "free appropriate public education" is defined in 20 U.S.C. § 1401(18) (1982) as

special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate

preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under [20 U.S.C. § 1414(a)(5)].

"Special education" means "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." 20 U.S.C. § 1401(16). The language of § 79-3314 is identical to that of § 1401(16).

The U.S. Supreme Court has held that a state satisfies the requirement to provide a handicapped child with a free appropriate public education

by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

*Hendrick Hudson Dist. Bd. of Ed. v. Rowley, supra* at 458 U.S. at 203-04. We adopted this standard in the supplemental opinion in *Adams Central School Dist. v. Deist*, 215 Neb. 284, 338 N.W.2d 591 (1983).

The record shows that Melissa has a very limited capacity to learn and receive educational benefit. She has never reached a level where her instruction could be considered to "approximate the grade levels used in [Nebraska's] regular education." She is, however, entitled to an IEP from which she can receive educational benefit appropriate to her condition. *Hendrick Hudson Dist. Bd. of Ed. v. Rowley, supra; Adams Central School Dist. v. Deist*, 215 Neb. 284, 338 N.W.2d 591 (1983).

The type of education Melissa receives is calculated to enhance her basic living skills. Melissa is being trained to open her mouth to receive food, to swallow food, and to tolerate a wet washcloth to her face. She has met her program objective for coactive reaching, can retain her grasp for 20 seconds, and has learned to activate a switch to turn on music. Melissa also participates in a visual tracking program and a toileting program.

Melissa's skills are quite likely to regress if her educational routine is interrupted. The record shows that each time Melissa has been moved and her educational program interrupted, she has suffered a regression. Given the nature of Melissa's handicapping conditions, Melissa would suffer undue regression with a 3-month lapse in programming, and her recoupment time would be much longer than for a normal child. Accordingly, in order for Melissa to receive a free appropriate public education, she must have a 12-month school year.

As noted by the hearing officer, Melissa's history supports this conclusion. The record shows that while Melissa was at ESU-13 from 1978 through 1985, she made no progress, regressed in her eating and drinking skills, and generally deteriorated both educationally and physically. Melissa made progress while participating in a 12-month school year at Bethphage, and received educational benefit from her program during her 20 months at Bethphage. Although her progress was small and intermittent, even that progress was an improvement in her condition.

Having determined that Melissa is entitled to a 12-month school year, we must next decide the issue of where Melissa's 12-month educational program should take place. Again, we agree with the hearing officer and find that CDC is the more appropriate facility.

The record shows that, in general, ESU-13 provides only a 9-month program. In order for the District to provide a 12-month education for Melissa through ESU-13, it would be necessary to provide 9 months of schooling at ESU-13, then contract for an alternate placement for the remaining 3 months, and then arrange for resumption of the 9-month school period.

This type of interruption would result in a 2- to 4-week adjustment period accompanied by regression during the two annual changes. This result is inappropriate. There is also evidence that the ESU-13 facility, unlike CDC, is geared to higher functioning children, and not toward the profoundly handicapped.

We determine that Melissa needs to be in one facility where she can receive her education on a year-round basis and that Melissa's educational placement should be at the Child Development Center in Scottsbluff, where year-round service is available.

Since we have dismissed Wilson's appeal against the Department for lack of jurisdiction, we consider the issue of residential placement only as it affects the cross-appellee, the District.

The District does not contend that the residential placement sought herein is a necessary "medical service," but recognizes that the question is whether residential placement is a "related service" required to be furnished in this case as part of a "free appropriate public education." We are not faced with the type of situation in *Timothy W. v. Rochester, N.H., School Dist.*, 875 F.2d 954 (1st Cir. 1989), where the school district, in effect, stonewalled the request of a severely handicapped child to obtain an appropriate public education by contending that Timothy W. was so handicapped that he was not entitled to the benefits provided by the federal act. The Rochester district contended that Timothy W. was so handicapped that he could not be educated at all. The District herein has not taken that position, but is contesting the limits of the free appropriate public education it recognizes it must furnish to Melissa.

As stated above, Melissa is entitled to receive special education *and* sufficient related services to permit her to benefit educationally from that instruction. *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982); *Adams Central School Dist. v. Deist*, 215 Neb. 284, 338 N.W.2d 591 (1983); 20 U.S.C. § 1401(18).

Under the federal act, the term "related services" includes transportation and such developmental, corrective, and other supportive services (including speech pathology and audiology,

psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education. 20 U.S.C. § 1401(17). Similarly, § 79-3310 provides:

> Related services shall mean transportation services and such developmental, corrective, and other supportive services, including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, as may be required to assist a handicapped child to benefit from special education and shall include the early identification and assessment of handicapping conditions in children. Medical services shall be for diagnostic and evaluation purposes only.

"Residential care" is defined in § 79-3312 as "food and lodging and any other related expenses which are not a part of the education program, but such care shall not include expenditures for medical and dental services." Under § 79-3312, medical and dental services are the responsibility of the child's parents or legal guardian.

In *Irving Independent School Dist. v. Tatro*, 468 U.S. 883, 104 S. Ct. 3371, 82 L. Ed. 2d 664 (1984), the Court held that clean intermittent catheterization (CIC) was a "related service" under the federal act. In so holding, the Court noted several limitations which would tend to minimize the burdens feared by the school district, including the following:

> [O]nly those services necessary to aid a handicapped child to benefit from special education must be provided, regardless how easily a school nurse or layperson could furnish them. For example, if a particular medication or treatment may appropriately be administered to a handicapped child other than during the school day, a school is not required to provide nursing services to administer it.

468 U.S. at 894.

The issue in *Irving Independent School Dist. v. Tatro, supra*, was whether CIC was a "related service," as opposed to an

excluded medical service under the act. In contrast, this court has been asked to determine whether residential placement, as a related service, would help Melissa to benefit from special education.

The U.S. Supreme Court held that the language of the act in question "contains no requirements . . . that States maximize the potential of handicapped children 'commensurate with the opportunity provided to other children.' " *Hendrick Hudson Dist. Bd. of Ed. v. Rowley, supra* at 458 U.S. at 189-90.

We agree with the analysis set out in *Abrahamson v. Hershman,* 701 F.2d 223, 227 (1st Cir. 1983):

It follows from *Rowley* that the Act does not authorize residential care merely to enhance *an otherwise sufficient* day program. A handicapped child who would make educational progress in a day program would not be entitled to placement in a residential school merely because the latter would more nearly enable the child to reach his or her full potential.

In the case before us, a good-faith effort has been made to "mainstream" Melissa, and under the record in this case, residential placement (which in this case would amount to institutionalization of Melissa) is not necessary for educational purposes. While we do not agree with everything found by the hearing examiner as to the ease or difficulty of caring for Melissa, we agree fully with his finding that a residential placement is not required for Melissa to benefit educationally from her IEP. A residential placement may well be necessary for other reasons, but not for educational purposes.

Bearing in mind the *Rowley* Court's admonition that reviewing courts should not substitute their own notions of sound educational policy for those of the school authorities which they review, we hold that the IEP proposed by the District, with respect to the 9-month school year, was not reasonably calculated to enable Melissa to receive a free appropriate public education. We further find that residential placement is not necessary in the context of this case.

The judgment of the district court, affirming the decision of the hearing officer, is affirmed. The Department's motion to dismiss Wilson's cross-appeal for lack of jurisdiction in this

court is sustained.

AFFIRMED IN PART, AND CROSS-APPEAL
DISMISSED IN PART.