MITCHELL D. CRIDER, A MINOR, BY AND THROUGH HIS MOTHER AND NEXT FRIEND, BRENDA L. CRIDER, AND MARVIN CRIDER AND BRENDA L. CRIDER, HUSBAND AND WIFE, APPELLANTS, V. BAYARD CITY SCHOOLS ET AL., APPELLEES.

553 N.W.2d 147

Filed September 27, 1996. No. S-94-606.

David J. Cullan, of David J. Cullan & Associates, and Rebecca Maser Peterson for appellants.

James R. Hancock, of Hancock & Denton, P.C., for appellee Bayard City Schools.

Bruce A. Smith, of DeMars, Gordon, Olson, Recknor & Shively, for appellee Educational Service Unit No. 12.

Robert V. Roach and Thomas H. Cellilli III, of Hansen, Engles & Locher, P.C., for appellee Region 1 Office of Human Development.

Rodney M. Confer and James A. Snowden, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Regional West Medical Center.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Mitchell D. Crider, a minor and special education student, by and through his mother and next friend, Brenda L. Crider, and Marvin Crider and Brenda L. Crider, husband and wife, the appellants, in an action in the Morrill County District Court, alleged that Regional West Medical Center and three educational entities, the appellees, failed to provide agreed-upon physical therapy mandated by law, resulting in severe injuries to Mitchell Crider. It was further alleged that this failure occurred without the knowledge of the parents. The petition alleged causes of action under common law and under Nebraska's Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991). Following the filing of the appellants' second amended petition, the district court sustained the appellees' demurrers, in part on the basis that the appellants did not exhaust the administrative remedies provided under federal and state law. The appellants filed an appeal of that judgment with the Nebraska Court of Appeals.

The appellants alleged in their appeal that the trial court erred by holding that (1) special education students have no cause of action for personal injuries and damages suffered as a result of medical malpractice, medical abandonment, or other negligence; (2) the appellants must exhaust administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (1994) (IDEA), and Nebraska's Special Education Act, Neb. Rev. Stat. § 79-3301 et seq. (Reissue 1994) (SEA), prior to filing a cause of action alleging negligence; and (3) IDEA and SEA provide the exclusive remedies to the appellants under the circumstances alleged in the petition. We removed the case to our docket pursuant to our power to regulate the caseloads of the lower courts. We reverse.

### BACKGROUND—FACTS PLED

The appellants filed a second amended petition on February 25, 1994. Under the rules relating to review of demurrers, all

well-pled facts are taken as true. With that in mind, we recite the following facts alleged.

Bayard City Schools, District No. 21 (Bayard Schools); Educational Service Unit No. 12 (ESU #12); and Region 1 Office of Human Development (Region 1), which operates the Child Development Center (CDC), are political subdivisions organized and existing under the laws of the State of Nebraska.

Regional West Medical Center (Regional West) is a private, nonprofit corporation and the operator of a medical facility and hospital licensed and regulated by the State of Nebraska.

This action against Bayard Schools, ESU #12, and Region 1 was commenced pursuant to the Political Subdivisions Tort Claims Act.

Regional West is not qualified or covered under the Nebraska Hospital-Medical Liability Act.

Mitchell Crider was found to be a "handicapped child" within the meaning of SEA and thus was entitled to receive special education and related services from Bayard Schools and ESU #12.

Bayard Schools and ESU #12 were "servic[ing] agencies" within the meaning of SEA and were obligated to provide, fund, supervise, and direct special education programs for handicapped children such as Mitchell Crider who resided within the geographical boundaries of Bayard Schools and ESU #12.

CDC, which was operated by Region 1, when providing services to the appellants, was a "service provider" and had been provisionally approved by the State Department of Education to provide special education contractual services.

Regional West, when providing medical care and treatment to Mitchell Crider, was a "service provider" and had been provisionally approved by the State Department of Education to provide "related services" to children such as Mitchell Crider.

Due to the lack of services available within Bayard Schools or ESU #12, special education contractual services were obtained for Mitchell Crider by agreements between Bayard Schools, ESU #12, and Region 1. The services were provided at CDC.

Due to the lack of related services available within Bayard Schools or ESU #12 or from the CDC staff, related services were obtained for Mitchell Crider by agreements with Regional West. Such services, including physical therapy, were to be provided for Mitchell Crider at CDC, and Regional West undertook to provide the physical therapy to him.

The appellants state that they were informed by the appellees and believe that written contracts between Bayard Schools and Regional West provided for rehabilitation services, including physical therapy, to handicapped children, including Mitchell Crider.

The appellants also allege that they were informed and believe that some portions of the alleged agreements between the appellees as to special education contractual services and related services, including physical therapy, which the appellees undertook to provide to Mitchell Crider, may have been reduced to written memorandums while some may have been strictly oral. Any such written memorandums are alleged to be in the possession of one or more of the appellees.

Regional West allegedly failed to provide physical therapy to Mitchell Crider from January 22, 1991, to and after August 15, 1991, although it had been determined by and for the appellees that physical therapy was necessary and appropriate. The physical therapy was discontinued without notice to Marvin and Brenda Crider from and after January 22, 1991, to and including September 19, 1991. The failure to provide physical therapy was not made known to Marvin and Brenda Crider until examination and testing at the Chadron Cerebral Palsy Clinic on August 10, 1991, revealed that both of Mitchell Crider's hips had dislocated due to the development of severe contractures from the lack of adequate physical therapy.

Mitchell Crider is a minor. He was born prematurely and suffers from microcephaly with shunted hydrocephalus, cerebral palsy, a seizure disorder, failure to thrive, and gastroesophageal reflux. He is nonambulatory and non-weight-bearing. At all times, Mitchell Crider was unable to understand or communicate that physical therapy was not being provided, that severe hip contractures were developing, or that his hips were dislocating.

For their cause of action, the appellants allege that the appellees either knew or should have known that physical therapy was not being provided to Mitchell Crider as had been agreed and undertaken; that Marvin and Brenda Crider were not aware of the discontinuance of physical therapy; that Marvin and Brenda Crider relied on Bayard Schools, ESU #12, and the staff at CDC as professional educators to provide, fund, supervise, and direct the provision of all rehabilitation services at CDC and to tell them of any changes or interruptions of such services; and that Marvin and Brenda Crider would have objected to such discontinuance of physical therapy and would have attempted to have services provided by Regional West or some other appropriate medical provider.

The appellants claim that because Marvin and Brenda Crider were not informed by the appellees that Mitchell Crider was not receiving physical therapy as had been agreed and undertaken, they were not given an opportunity to intervene or to seek provision elsewhere for such service by Regional West or any other appropriate medical provider.

The appellants further claim that the failure of Regional West to provide physical therapy without notice to Marvin and Brenda Crider constitutes medical abandonment of Mitchell Crider and that such failure was a proximate cause of his bilateral hip dislocation and the resultant injury and damages suffered by the appellants.

The appellants urge that Regional West was negligent (1) in failing to continue to provide reasonable, prudent, and proper care by failing to provide physical therapy as it had agreed and undertaken to provide; (2) in failing to employ sufficient qualified employees with which to provide physical therapy services to Mitchell Crider; (3) in failing to advise Marvin and Brenda Crider that physical therapy had been discontinued or was not being provided, when Regional West knew or should have known that such services were necessary for a person in Mitchell Crider's condition; (4) in failing to properly observe and report Mitchell Crider's condition; and (5) in negligently abandoning Mitchell Crider.

The appellants further allege that Region 1/CDC, Bayard Schools, and ESU #12 were negligent (1) in failing to prop-

erly supervise and monitor the performance of the agreements by Regional West to provide physical therapy to Mitchell Crider to see that such physical therapy was provided as had been agreed and undertaken at CDC; (2) in failing to advise Marvin and Brenda Crider that physical therapy had been discontinued or was not being provided, when the named appellees knew or should have known that such services were necessary for a person in Mitchell Crider's condition; and (3) in negligently abandoning Mitchell Crider.

The appellants further claim that as a result of the appellees' negligence, Mitchell Crider has suffered personal injury, disability, and disfigurement. They claim general and special damages including, but not limited to, doctor, nursing, medical, institutional, educational, and other costs and expenses to be incurred in the future which are made necessary by reason of the injury and disability. The appellants also claim that Mitchell Crider's injuries permanently deprive him of the ability to support himself or to provide for the extraordinary costs and expenses incurred.

The appellants allege that as a result of the appellees' negligence, Marvin and Brenda Crider have incurred medical and hospital expenses for Mitchell Crider to date and also claim expenses reasonably certain to be incurred in the future because of the above injuries suffered by Mitchell Crider. They allege that they have further suffered the loss of the services of Mitchell Crider.

In sustaining the appellees' demurrers, the trial court stated that the appellants failed to allege that they had exhausted the administrative remedies provided by IDEA and SEA, that IDEA and SEA provide the exclusive remedies under the circumstances alleged in the petition, and that the damages sought by the appellants are not allowable under IDEA or SEA. The court also found that further amendment of the petition would not cure the failure to state a cause of action.

## ASSIGNMENTS OF ERROR

The appellants assign that the district court erred by holding that (1) special education students have no cause of action for personal injuries and damages suffered as a result of med-

ical malpractice, medical abandonment, or other negligence; (2) the appellants must exhaust administrative remedies under IDEA and SEA prior to filing a cause of action alleging negligence; and (3) IDEA and SEA provide the exclusive remedies to the appellants under the circumstances alleged in the petition.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996); *Vowers & Sons, Inc. v. Strasheim*, 248 Neb. 699, 538 N.W.2d 756 (1995); *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995).

An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996); *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993).

In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Talbot, supra*; *Carlson v. Metz*, 248 Neb. 139, 532 N.W.2d 631 (1995); *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994).

## ANALYSIS

We previously addressed issues of special education in the case *Williams v. Gering Pub. Schools*, 236 Neb. 722, 463 N.W.2d 799 (1990). In *Williams*, we stated:

> The education of handicapped children is governed by both federal and state legislation. As this court noted in *Adams Central School Dist. v. Deist*, 214 Neb. 307, 334 N.W.2d 775 (1983), *supp. op.* 215 Neb. 284, 338 N.W.2d 591, *cert. denied* 464 U.S. 893, 104 S. Ct. 239, 78 L. Ed. 2d 230, [IDEA] represents the federal body of law. The care and education of handicapped children are also provided for at the state level pursuant to [SEA].

> . . . As we noted in [*Deist, supra*], the act is a funding statute under which the federal government supplies financial assistance to the states for the education of handicapped children. By accepting federal funds, the state implicitly agrees to meet certain criteria and requirements. The act requires each state that accepts these funds to provide all handicapped children with a "free appropriate public education." 214 Neb. at 314, 334 N.W.2d at 780; 20 U.S.C. § 1412(1).

236 Neb. at 730, 463 N.W.2d at 805.

Title 20 U.S.C. § 1415(f) states, in relevant part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 . . . or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section [setting forth administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

If the appellees failed to satisfy the statutory requirements of either IDEA or SEA, the appellants must exhaust their administrative remedies prior to filing suit in court. See 20 U.S.C. § 1415.

IDEA is a funding statute under which the federal government supplies financial assistance to the states for the education of disabled students. IDEA requires that states that accept federal funds must provide disabled children with a "free appropriate public education." 20 U.S.C. § 1400(c).

In *Adams Central School Dist. v. Deist*, 215 Neb. 284, 286, 338 N.W.2d 591, 592 (1983), we stated:

> "A free appropriate public education requires that each handicapped child be provided with personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction, which instruction and services must be provided at public expense, must meet the state's educational standards,

must approximate the grade levels used in the state's regular education, and must comport with the child's individualized educational program."

SEA states that school districts must provide not only a free appropriate public education, but also the necessary related support services for achieving that goal. Those services have been statutorily defined to include physical therapy. Neb. Rev. Stat. § 79-3310 states, in relevant part, "Related services shall mean . . . physical and occupational therapy . . . ."

SEA provides that the school districts may contract with other entities to provide such physical therapy services. Neb. Rev. Stat. § 79-3321 states, "The special education programs may be provided by any school district, by contracting with another school district or servicing agency . . . ."

The determination of whether IDEA or SEA provides the exclusive remedy or whether the appellants must first exhaust their administrative remedies for certain claims under IDEA or SEA, turns on which claims are encompassed within the provision of a "free appropriate public education" guaranteed by the acts. The appellants contend that the relief they are seeking, damages for Mitchell Crider's injuries resulting from the alleged negligence of the appellees, is outside of the scope of IDEA, and their theories of recovery are based on common-law negligence rather than special education law. The appellees assert that IDEA and SEA provide the exclusive remedy under the circumstances alleged in the second amended petition and that the damages sought by the appellants are not allowable under IDEA or SEA. Neither the contentions of the appellants nor those of the appellees are entirely correct.

In Nebraska, the board of education of every school district is charged with the duty to "provide or contract for special education programs and transportation for all resident children who would benefit from such programs." Neb. Rev. Stat. § 79-3320. It is a well-settled rule in Nebraska that state courts can take judicial notice of general rules and regulations established and published by federal agencies under authority of law. *Raben v. Dittenber*, 230 Neb. 822, 434 N.W.2d 11 (1989); *Bohy v. Abbott*, 154 Neb. 139, 47 N.W.2d 95 (1951);

*Keyser v. Allen*, 149 Neb. 449, 31 N.W.2d 309 (1948); *Powell v. Anderson*, 147 Neb. 872, 25 N.W.2d 401 (1946). Under authority of law, federal agencies have established and published general regulations specifying the duties of educators of disabled children. These regulations are codified at title 34 of the Code of Federal Regulations.

The regulations provide that special education programs and support services may be provided by contracting with an approved service provider, see C.F.R. §§ 300.301 and 300.360(b); however, responsibility for compliance with state and federal regulations remains with the resident school district, see 34 C.F.R. § 300.600. In addition, the regulations specify that the resident school district shall monitor the progress of those children for whom it has contracted for related services. See 34 C.F.R. § 300.402.

The regulations also direct school districts to provide a copy of the procedures for complaints and due process hearings to parents like Marvin and Brenda Crider. See 34 C.F.R. §§ 300.504 through 300.510. Furthermore, the resident school district is required to provide notice to the parents of a child with a disability before the school district proposes to change the educational placement of or the provision of a free appropriate public education to the child. See 34 C.F.R. §§ 300.504 through 300.509.

A school district, educational service unit, or human service center does not have a duty derived from common law to monitor the care of a physical therapy patient or to report any proposed changes in care to the patient's parents. As we stated in *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986), these agencies are entitled to rely upon the competence of a professional therapist, licensed, paid, and supplied by an entity such as Regional West, to properly treat patients under their care. The duty of Bayard Schools, ESU #12, and Region 1/CDC to monitor physical therapy services and notify the student/patient's parents of proposed changes in services is derived solely from the mandates of IDEA and SEA. To the extent that the appellants maintain that Bayard Schools, ESU #12, and Region 1/CDC's (1) failure to monitor or supervise Regional West's provision of physical therapy

services or (2) failure to notify Marvin and Brenda Crider that physical therapy had been discontinued or of a proposed change in physical therapy services was a proximate cause of the injuries to Mitchell Crider, those claims are directly within the purview of IDEA and SEA.

Therefore, the district court does not have jurisdiction to entertain a claim against Bayard Schools, ESU #12, or Region 1/CDC based on a failure to monitor Regional West's provision of physical therapy services or a failure to notify Marvin and Brenda Crider of a proposed or actual discontinuance of the services unless the appellants have alleged either (1) exhaustion of IDEA or SEA remedies or (2) that exhaustion of such remedies would be futile. See, § 1415(f); *Hayes v. Unified School Dist. No. 377*, 877 F.2d 809 (10th Cir. 1989). See, also, e.g., *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995) (aggrieved parent or disabled child is not barred from seeking monetary damages under IDEA, citing *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992)); *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865 (3d Cir. 1990) (exhaustion requirement of IDEA does not require exhaustion where relief sought is unavailable in administrative proceeding, such as where monetary damages are sought). Thus, even in circumstances where the relief sought in a civil action is not available in an IDEA or SEA administrative proceeding (e.g., where monetary damages are sought), the burden of pleading and proving that administrative remedies would be futile falls upon the party seeking to avoid them. See *Matula, supra*. The appellants failed to make such an allegation in their second amended petition.

The appellants' claims of abandonment are derived from two separate sources of duty owed to Mitchell Crider. Regional West had a duty, outside of the purview of IDEA and SEA, to use reasonable care in the provision of physical therapy services once it undertook to provide those services to Mitchell Crider. The appellants' allegations that Regional West failed to provide reasonable and proper physical therapy services and negligently failed to notify Marvin and Brenda Crider that the physical therapy had been discontinued are sufficient to state a cause of action for common-law medical mal-

practice or medical abandonment. The duty owed to a patient and the type of remedy available to an aggrieved patient are not affected by the fact that Mitchell Crider was referred to Regional West by a school district or educational service unit. Once a hospital agrees to provide medical services to a patient, that hospital and its licensed professional employees owe a duty to a patient to exercise that degree of care, skill, and diligence generally used by hospitals in the community or hospitals located in similar communities. See *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992).

The appellants further allege that Bayard Schools, ESU #12, and Region 1/CDC negligently abandoned their student by not informing Marvin and Brenda Crider of the discontinuance of physical therapy services when these appellees knew, or should have known, that the physical therapy was not being provided. In *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986), we recognized the legal principle that a school district may be liable in permitting negligent conduct to occur on its premises when the school district knew, or reasonably should have known, that the negligent conduct on its premises presented an unreasonable risk of harm to those entrusted to the school. See Restatement (Second) of Agency § 213(d) at 458 (1958) (person conducting activity through servants or other agents is subject to liability for "permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control"). In the instant case, however, there are no allegations that these appellees' supervisory personnel were aware of the specific physical therapy program being administered to Mitchell Crider or knew of the potential dangers inherent in the continuance or discontinuance of such a program. See *Greening, supra*. Absent allegations of a legally cognizable breach of duty, the appellants failed to state a cause of action against Bayard Schools, ESU #12, and Region 1/CDC of abandonment of their student.

## CONCLUSION

The appellants' second amended petition states a cause of action against Regional West. However, based on the forego-

ing reasons, the district court was correct in determining that the appellants failed to state a cause of action against Bayard Schools, ESU #12, and Region 1/CDC. Notwithstanding, when a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that an amendment will correct the defect. *Pilot Investment Group v. Hofarth, ante* p. 475, 550 N.W.2d 27 (1996); *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996). We are not able to determine at this stage of the pleadings that an amendment would not correct the defect, and the appellants should therefore be granted leave to amend their petition in a manner not inconsistent with this opinion. Accordingly, the district court's decision is hereby reversed.

REVERSED.