MATTHEW R. KOLTES, APPELLANT, V.
VISITING NURSE ASSOCIATION ET AL., APPELLEES.
591 N.W. 2d 578

Filed April 16, 1999.    No. S-97-1331.

James R. Brown and Mark J. Curley, of Brown & Brown, P.C., and David J. Cullan for appellant.

Raymond E. Walden and, on brief, James W. Ambrose II, of Lamson, Dugan & Murray, for appellees St. Pius X/St. Leo and Roncalli.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Matthew R. Koltes brought this personal injury action against several parties, including St. Pius X/St. Leo Grade School and Roncalli High School (collectively the schools). The district court for Douglas County granted the schools' motion for summary judgment based upon its determination that the schools were not liable to Koltes as a matter of law, and Koltes appealed. We find no error and therefore affirm the judgment of the district court.

## BACKGROUND

### PLEADINGS

In his operative second amended petition, Koltes alleged that during periods when he was enrolled as a student at St. Pius X/St. Leo Grade School (Pius) and subsequently at Roncalli High School (Roncalli), both located in Douglas County, he underwent periodic physical examinations conducted on school premises by nurses employed by the Visiting Nurse Association (VNA), a codefendant in the original action. Koltes alleged that these examinations revealed an abnormal curvature of his spine and that the schools were negligent in failing to provide his parents written notification of this condition and advise them of "the necessity of professional attendance" for this condition. Koltes alleged that as a proximate result of the schools' alleged negligence, and that of the other named defendants, he suffered serious and permanent bodily injuries for which he was entitled to damages. In their joint answer, the schools denied that they

were negligent and asserted that the second amended petition failed to state a cause of action against them. After certain discovery was completed, the schools filed a motion for summary judgment.

### UNCONTROVERTED FACTS

Koltes was enrolled as a student at Pius from 1985 through 1989 and then enrolled at Roncalli. During his years as a student at the schools, he was periodically screened for abnormal spinal conditions by nurses who were employed by VNA. VNA provided health services to the schools pursuant to its contract with Douglas County, which compensated VNA for such services.

On or about January 27, 1986, while Koltes was a student at Pius, he underwent a scoliosis screening performed by a VNA nurse on the school premises. His records indicate the results of the screening test as "Scol. watch . . . ." On or about February 13, 1989, Koltes again underwent a scoliosis screening by a VNA nurse while at Pius. The nurse noted: "Scoliosis screening watch . . . ."

Koltes' health records were sent from Pius to Roncalli when he enrolled there in the fall of 1989. On May 21, 1990, while attending Roncalli, Koltes underwent another scoliosis screening administered by a VNA nurse. His records indicate the scoliosis was improved but a slight kyphosis was noted. Employees of the schools did not review student health records, which were compiled by VNA nurses and kept on the school premises.

Dr. James D. Crew was Koltes' family physician throughout the relevant time period. Dr. Crew's records indicate he examined Koltes approximately nine times from 1982 to 1993. While conducting a physical examination on Koltes for school in August 1987, Dr. Crew found Koltes' skeletal development to be normal. Dr. Crew's records state that poor posture was discussed following an examination in 1990 of Koltes' back, similar to those performed by VNA nurses. Dr. Crew's records for August 1991 state that Koltes' musculoskeletal system was normal. On March 1, 1993, Dr. Crew first noted a condition of Koltes' back which he diagnosed as a slight kyphosis. Dr. Crew again examined Koltes on May 6, and at that time, he referred Koltes to a Dr. Franco, who placed Koltes in a brace for 12

months in an attempt to stop the progression of the kyphosis. Ultimately, Koltes underwent two surgeries, a week apart, in an attempt to correct his abnormal spinal condition.

## DECISION OF DISTRICT COURT

The district court granted the schools' motion for summary judgment. It found no evidence that the schools knew of Koltes' abnormal spinal condition or that VNA nurses had not reported their findings to Koltes' parents. The district court further determined, as a matter of law, that the schools had no duty to supervise the VNA nurses and had a right to rely upon them to perform their professional responsibilities. Finally, notwithstanding its finding that no legal duty was owed by the schools, the district court found that there was no showing that any failure to report Koltes' condition to his parents was a proximate cause of his damages.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Boyle v. Welsh, ante* p. 118, 589 N.W.2d 118 (1999); *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998).

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Ag Servs. of America v. Empfield*, 255 Neb. 957, 587 N.W.2d 871 (1999).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998).

## ASSIGNMENT OF ERROR

Koltes contends, restated and summarized, that the district court erred in granting summary judgment to the appellee schools.

## ANALYSIS

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Doe v. Gunny's Ltd. Partnership, ante* p. 653, 593 N.W.2d 284 (1999); *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). We focus upon the question of whether the schools owed a legal duty to Koltes with respect to in-school screening for abnormal spinal conditions.

In the context of a negligence action, duty is defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998); *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994). The existence of a duty depends upon whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in light of the apparent risk. *Id.* Determining whether a legal duty exists is a question of law dependent upon the facts in a particular situation. *Doe v. Gunny's Ltd. Partnership, supra*; *Popple v. Rose, supra*.

Koltes argues that the schools had a duty to notify his parents of the findings by VNA nurses pursuant to the statute then applicable, Neb. Rev. Stat. § 79-4,133 (Reissue 1994), which provides in part:

> Every school district shall, separately and carefully, cause every child under its jurisdiction to be inspected . . . to ascertain if such child is suffering from (1) defective sight or hearing, (2) dental defects, or (3) other conditions as prescribed by the Department of Health. If such inspection determines that any child has such condition, it shall be the duty of the school to notify the parent of the child, in writing, of such condition and explain to such parent the necessity of professional attendance for such child.

In support of his argument that a statutory duty exists under the facts of this case, Koltes relies on the affidavit of Eileen Heitman, R.N., and an attached manual published by the then

Nebraska Department of Health and the Nebraska Department of Education entitled "Health Services in Nebraska Schools—Policies and Procedures." This document includes a discussion of scoliosis screening by school nurses and states that if signs of scoliosis are recognized, "[m]edical consultation with the child's physician should be recommended to parents." Based on this manual, her examination of various depositions, and her familiarity with standards of nursing care, Heitman opined that the applicable standard of care required that "when a student is observed to have an abnormal spinal curvature that this information be recorded in the student's health record and to provide the student and/or his parents a report of the observed abnormality," including such conditions as kyphosis and scoliosis.

The manual relied upon by Koltes clearly states that it is intended "as a guide for Nebraska school systems in developing, improving and maintaining their health service programs." James C. Dills, who is employed by the Nebraska Department of Health and Human Services as the director of health promotion and education, stated in an affidavit that the manual is intended to be used as a guide and "has never been adopted as regulation by the Department of Health and serves only to provide the schools with recommendations in developing their own program." There is nothing in the record establishing that the Department of Health and Human Services has ever, by regulation or otherwise, exercised its authority under § 79-4,133, now codified at Neb. Rev. Stat. § 79-248 (Reissue 1996), to require school districts to screen students for abnormal spinal conditions. Thus, neither the Heitman affidavit nor the attached manual afford a basis for recognition of a legal duty to perform this type of screening under either § 79-4,113 or the current § 79-248, and we conclude as a matter of law that no such duty exists.

Alternatively, Koltes argues that the schools had a duty not to permit negligent conduct to occur on their premises when they knew or reasonably should have known that the negligent conduct presented an unreasonable risk of harm to students. We recognized the general validity of this theory in *Crider v. Bayard City Schools*, 250 Neb. 775, 553 N.W.2d 147 (1996), and *Greening v. School Dist. of Millard*, 223 Neb. 729, 393

N.W.2d 51 (1986), both of which involved the provision of health services on school premises. However, we determined as a matter of law that no duty existed under the facts presented in each case.

In *Greening*, an elementary school student suffered a fracture while participating in a physical therapy program administered at an elementary school by physical therapists who were employed by the State of Nebraska. The school district's supervisory personnel had no involvement in the development of the therapy program. Medical evidence established that the program was improper and caused the student's injury, but there was no evidence that the school district's supervisory personnel were aware of the specific nature of the therapy or its inherent dangers. We held that under these circumstances, the school district had no duty to take affirmative steps to ensure the safety of the physical therapy services which were provided on its premises. We reasoned that

> [t]he district was entitled to rely upon the competence of a professional therapist, licensed, paid, and supplied by the state. To hold otherwise would require a school district to independently verify the safety of a program developed by a professional who is entrusted by the state with the responsibility of carrying out such program.

223 Neb. at 739, 393 N.W.2d at 59.

Relying on *Greening*, we held in *Crider*, 250 Neb. at 786, 553 N.W.2d at 155, that "[a] school district, educational service unit, or human service center does not have a duty derived from common law to monitor the care of a physical therapy patient or to report any proposed changes in care to the patient's parents," notwithstanding the fact that therapy was being provided on the school premises. We reasoned that school officials were entitled to rely upon the competence of a licensed physical therapist who provided services to a special education student pursuant to a contractual arrangement and that in the absence of actual knowledge of the dangers associated with the continuance or discontinuance of the physical therapy program, the school district owed no common-law duty to take any action with respect to such services.

Applying the rationale of *Greening* and *Crider*, we conclude, under the uncontroverted facts of this case, that the schools had no duty to supervise or monitor the VNA nurses, or to take any affirmative steps to ensure that the nurses were carrying out their professional responsibilities to Koltes. It is clear from the record that no agency relationship existed between the schools and VNA. The nurses were licensed professionals, performing services pursuant to a contractual arrangement with VNA and Douglas County, and the schools had a right to rely upon VNA and its nurses to perform their duties in a competent manner in the absence of actual knowledge to the contrary. The record reflects that the schools had no actual knowledge of the nurses' findings with respect to Koltes' spinal condition or the fact that VNA or its nurses may not have communicated their findings to Koltes or his parents. Under these circumstances, we conclude that the schools owed no duty to Koltes with respect to the services provided by VNA and its nurses.

Because we agree with the district court on the dispositive issue that no legal duty existed, we need not review its analysis on the issue of proximate cause. For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED.